420 So.2d 473 (1982)
B.A. HORSTMANN and Mrs. B.A. Horstmann
v.
Darwin DRAKE and Continental Insurance Company.
No. 12972.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied October 26, 1982.
*474 Charles R. Capdeville, Metairie, for defendants-appellants.
Bruce G. Reed, New Orleans, Law Office of Richard A. Tonry, Chalmette, for plaintiffs-appellees.
Before BYRNES, WARD and WILLIAMS, JJ.
WARD, Judge.
Dr. and Mrs. Horstmann brought suit in the Civil District Court seeking damages for personal injuries and medical expenses they sustained in an automobile accident. In the suit they allege they were injured on February 11, 1978, when an automobile driven by Darwin Drake struck the rear end of the automobile they occupied. After the accident, Dr. and Mrs. Horstmann attempted to locate Drake, but they were unsuccessful, and they could not serve him with either their petition for damages or their pretrial motions. They therefore joined as a defendant their insurance carrier, Continental Insurance Company, which had insured Dr. Horstmann's vehicle and any of its occupants against the risk of injury from an uninsured motorist. After a trial on the merits, the jury awarded to Dr. Horstmann $30,000.00 for pain and suffering and $10,000.00 for lost income; and to Mrs. Horstmann $20,000.00 for pain and suffering and $300.00 for medical expenses. The trial court rendered judgment, based on the jury verdict, against Continental, and Continental has appealed, alleging that there were two errors committed during the trial.
First, Continental claims the trial judge erred when he refused to permit the jury to hear testimony that would show that Dr. Horstmann by verbal instructions had purchased uninsured motorist coverage with limits of $5,000.00 for injuries to one person and $10,000.00 for injuries to more than one. Since the jury's award exceeded those limits, that award must be reduced if Dr. Horstmann gave those instructions and if, but only if, verbal instructions may reduce uninsured motorist limits. Otherwise, the uninsured motorist policy limits are required by statute to be the same as Dr. Horstmann's policy limits for bodily injury to others, in this case $100,000.00/$300,000.00, more than enough to cover the jury's award. LSA-R.S. 22:1406.
During trial Continental offered the testimony of Mr. Crusel, Continental's agent, to prove Dr. Horstmann was insured by Continental for years prior to the accident and that he had always selected $5,000.00/$10,000.00 coverage for uninsured motorist risk. Continental claimed that since the policy at the time of the accident was a renewal policy, Dr. Horstmann's verbal instructions in the purchase of prior policies applied to that policy. Dr. Horstmann objected to the offer; the trial judge sustained the objection, and Continental proffered the excluded testimony.
Although Continental alleges the trial judge erred, we hold that the ruling is correct; a prior oral selection of lower limits is not applicable to the policy that insured Dr. Horstmann at the time of the accident. Evidence of a prior oral selection of a lower amount of coverage is immaterial. We base our holding on the Louisiana Supreme Court's decision in A.I.U. Insurance Co. v. F.J. Roberts, Jr., 404 So.2d 948 (La. 1981). In that case the court said:
Uninsured motorist coverage is to be determined not only by the provisions of the contract but also by applicable statutes. In the absence of a specific rule, general insurance law controls. While it is true that prior to 1977, La.R.S. 22:1406 did not require selection of lower limits to be in writing, La.R.S. 22:628 then provided:

*475 "No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance."
In determining the applicability of La. R.S. 22:628, the provisions of La.R.S. 22:1406 must be examined more closely. La.R.S. 22:1406 mandates the inclusion of uninsured motorist coverage in any automobile liability policy delivered or issued for delivery in this state. Coverage is required in limits not less than the limits of bodily injury liability provided in the policy unless the insured selects lower limits. It is of no moment that the policy in the instant case provided lower limits since the coverage was read into the policy by the terms of the statute. Since selection of lower limits conflicted with the coverage written into the policy law, such selection was required to be in writing and attached to the policy. The oral waiver of uninsured motorist coverage was therefore invalid as being in contravention of La.R.S. 22:628 notwithstanding the fact that the version of La.R.S. 22:1406 in effect at the time did not contain a writing requirement. (Citations omitted). Clearly, prior to September 9, 1977, the effective date of Act 438 of 1977, any selection of lower limits, to be valid, had to be in writing and attached to the policy. (Emphasis added)
The instant case is strikingly similar. Dr. Horstmann's past policies contained the uninsured motorist provision with limits of $5,000.00/$10,000.00. Act 438 of 1977 (LSA-R.S. 22:1406) requires uninsured motorist coverage with policy limits equal to that for bodily injury to others, in this case $100,000.00/$300,000.00, unless Dr. Horstmann selected lower limits. General insurance law requires that agreements that modify coverage must be in writing and made a part of the policy. LSA-R.S. 22:628. Hence, before the uninsured motorist limits could be modified by Dr. Horstmann to select coverage at less than coverage for bodily injury, that selection had to be made by written agreement. A.I.U. Insurance Co. v. F.J. Roberts, Jr., supra. We therefore conclude the testimony offered by Continental to show a verbal agreement to purchase less uninsured motorist coverage would be immaterial.
On the same issue, during trial Continental alluded to a written selection of lower coverage by Dr. Horstmann in prior years. Dr. Horstmann denied that any existed. Nevertheless, he objected to the introduction of any document not produced by Continental in response to discovery motions, and the objection was sustained. We agree with the trial judge's ruling; if it existed, it was not admissible because it was not produced in response to Dr. Horstmann's discovery request. Further, since it was not proffered, it is not part of the record in this appeal, and Continental has not shown the ruling was erroneous.
Continental next contends the jury abused its discretion when it awarded damages which were excessive compensation to both Dr. and Mrs. Horstmann. The Louisiana Supreme Court has set the appropriate standards for appellate review of a jury award of damages in Reck v. Stevens, 373 So.2d 498 (La. 1979):
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La.C.Civ.P. art. 1934(3), we stated (after exhaustive review of the facts, and reversing the appellate court (on the basis of prior awards) the trier of fact's award) in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967):

*476 "The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the trial court...."
.....
However, the function of an appellate court is not "to decide what it considers an appropriate award on the basis of the evidence," (citation omitted) but rather only to review the exercise of the trier of fact's discretion in the matter.
To determine whether the jury abused its discretion, a brief summation of the facts is essential. The accident occurred on February 11, 1978, when Dr. and Mrs. Horstmann were returning to New Orleans from their farm. Dr. Horstmann was driving when the car developed engine trouble. He had put on his emergency lights and pulled to the far right side of the I-10 interstate, and he was travelling at a very low rate of speed, half in the right lane of the highway and half on the shoulder, when he was struck by Darwin Drake. The car was hit hard and knocked about a block down the road. Dr. and Mrs. Horstmann were thrown around inside the car so forcefully that they broke the front seat, and both ended up in the back seat of the automobile. The car was demolished.
The record also reveals the individual circumstances of the injuries in the present case. It shows Dr. Horstmann is a dentist who maintained an active practice before the accident, and who enjoyed a variety of robust activities in his leisure time. Because of injuries he sustained in the accident, he was forced to dramatically reduce his practice and curtail leisure activities. Dr. John McLachlan, his treating physician and an orthopedic surgeon, testified that Dr. Horstmann suffered injury to his neck caused by a whiplash motion when the automobile was struck from the rear and to his right knee when it was thrown against the dashboard. Dr. McLachlan's expert opinion was based on x-rays and subjective complaints made by Dr. Horstmann. It was his opinion that Dr. Horstmann had injured a pre-existing degenerative bone structure of the knee and that pain would continue indefinitely. Dr. Horstmann testified and described the continuous pain he experiences in his neck and knee, and he further described how his dental practice is limited, his income reduced, and his activities curtailed. This testimony was corroborated by income tax returns and the testimony of his daughter and son-in-law. We conclude, as to Dr. Horstmann, that the record supports the jury's award for both pain and suffering and loss of income.
The record also shows that after the accident, Mrs. Horstmann was immediately taken to the emergency room at Methodist Hospital, where she was examined by Dr. Robert Fortenberry. He testified that Mrs. Horstmann had a cervical strain and that he had observed muscle spasm and that he believed there was injury to pre-existing degenerative changes in her spine. Shortly thereafter, Dr. McLachlan assumed responsibility for her care and treatment. He testified, and his opinion was the same as the opinion of Dr. Fortenberry. Mrs. Horstmann suffered a cervical sprain and injured a pre-existing degenerative spinal bone condition. He based his opinion on Mrs. Horstmann's complaints of pain in the neck, shoulder blade, thoracic spine, and coccyx and on his observation of muscle spasm. Because of the pre-existing spinal condition, he believed pain would continue indefinitely. Mrs. Horstmann testified and described the pain she experiences as a result of the accident, and she related how her activities are limited because of it. Her testimony was also corroborated by her daughter and son-in-law. We conclude the record also supports the jury's award to Mrs. Horstmann for her pain and suffering.
We hold, therefore, that the Trial Judge did not err when he refused to admit testimony and the jury did not award excessive damages.
AFFIRMED.

*477 REASONS FOR JUDGMENT ON APPLICATION FOR REHEARING
Defendant's petition for a rehearing is denied. We, however, modify the judgment of June 8, 1982, to provide that plaintiffs are entitled to legal interest only from the date of judgment.
Counsel for defendants questioned for the first time in this motion for a rehearing the propriety of the Trial Court's award of interest from the date of judicial demand, and he now argues that interest is due only from the date of the Trial Court judgment. Although raised at this late date, we have considered this interesting question: In suits by an insured against his insurer for uninsured motorist benefits, does legal interest accrue from the date of filing of suit or from the date of judgment against the insurer? There is a difference of opinion among the Circuit Courts of Appeal as to when legal interest begins to accrue. The Second Circuit holds that legal interest accrues from the date of judicial demand, Powell v. Allstate Insurance Co., 233 So.2d 38 (La.App.2d Cir. 1970), while the Third Circuit holds that legal interest accrues from the date of judgment in the Trial Court, Guidroz v. Tauzin, 413 So.2d 682 (La.App.3rd Cir. 1982). We find the reasoning in Guidroz v. Tauzin more persuasive, and we adopt the rule of the Third Circuit: In suits by an insured against his or her insurer for uninsured motorist benefits, legal interest accrues from the date of judgment of the Trial Court.
The judgment of June 8, 1982, is hereby modified. The judgment of the Trial Court is amended to award plaintiffs interest from the date of judgment in the lower court; otherwise, it is affirmed.
BYRNES, J., concurs in the denial of the rehearing but dissents from the modification of the judgment as it relates to judicial interest.