477 So.2d 1171 (1985)
Tommy THOMAS
v.
HANOVER INSURANCE COMPANY.
No. CA840763.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
Rehearing Denied November 8, 1985.
Writ Granted January 13, 1986.
*1172 William H. Sanders, Jena, for plaintiff appellant Tommy Thomas.
R. Michael Caldwell, Baton Rouge, for defendant-appellee Hanover Ins. Co.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
GROVER L. COVINGTON, Chief Judge.
Plaintiff filed suit on June 30, 1982, against his employer's uninsured motorist carrier[1] for injuries he received on January 12, 1982, in an automobile accident with an unknown, uninsured motorist who fled the scene. Plaintiff was driving a vehicle belonging to his employer, RPM Corporation, at the time; the vehicle had been provided for him because his job as supervisor in the welding and spray department of the company required him to be on call on a twenty-four hour basis. After evaluating conflicting medical testimony, both live and through depositions, the trial court rendered judgment in favor of plaintiff and against Massachusetts Bay Insurance Company, a subsidiary of Hanover Insurance Company and the actual uninsured motorist carrier, for $72,577.09.
Plaintiff perfected this devolutive appeal alleging the following as errors: allowing the worker's compensation carrier (Hanover *1173 Insurance Company) a credit for any future worker's compensation it may be condemned to pay in a connected case not at issue here[2]; assigning equal weight to the testimony of the treating physicians and of those physicians who evaluated him for purposes of litigation preparation; and failing to assess penalties and attorney fees against the uninsured motorist carrier.
Defendant, Hanover Insurance Company, filed an answer to the appeal, requesting that the omission from the judgment of the credit for any future compensation benefits that was allowed in the written reasons for judgment be corrected.
For the reasons hereafter stated, we amend and affirm the judgment of the trial court.

SUMMARY OF MEDICAL EVIDENCE
Plaintiff claims damages for an alleged back injury sustained in the accident of January 12, 1982. The accident occurred when plaintiff, who was proceeding through an intersection pursuant to a green light, was struck broadside by the unknown, uninsured motorist, who ran a red light. Plaintiff was taken by ambulance to the emergency room of a Baton Rouge hospital, where he was treated for a fractured rib and discharged shortly thereafter. On the recommendation of the emergency room doctor, plaintiff saw a Dr. Byars for low back pain, and was apparently diagnosed as having a muscle strain. When his back pain failed to diminish, plaintiff sought treatment from a neurologist in Houston, Texas, Dr. John McCutchen, who became his primary treating physician. The testimony of Dr. McCutchen was offered by deposition. On the basis of the tests that were administered to plaintiff during a 10-day hospitalization period in Houston, Dr. McCutchen concluded that plaintiff had two protruding lumbar discs at the L4-L5 and L5-S1 levels and recommended a lumbar laminectomy for excission of the discs, which he claimed were causing pressure on certain nerve roots in plaintiff's back.
Plaintiff subsequently saw two neurosurgeons, two orthopedic surgeons, two psychiatrists and one psychologist, due to a dispute by the various insurance companies involved over the nature and severity of plaintiff's injury and his entitlement to coverage under any of the policies in existence: worker's compensation, the uninsured motorist policy of plaintiff's employer, and plaintiff's own uninsured motorist coverage (excess policy). The conclusions of these various specialists were conflicting for the most part.
Dr. Raeburn Llewellyn, a Board certified neurosurgeon, testified in court that his diagnosis of plaintiff was one of resolved protruded disc at the L4-L5 level with chronic neuralgia, and recommended conservative care.
Dr. John Clifford, also a Board certified neurosurgeon, testified in court that he felt plaintiff's complaints were mechanical in nature, compounded by his depression, and that plaintiff was fixated on his pain. Dr. Clifford summarized his examination of plaintiff by saying plaintiff had significant complaints but the examination produced minimal findings.
Dr. Baer Rambach, a Board certified orthopedic surgeon, who testified via deposition for the defendants, stated basically that he found plaintiff's responses and reflexes on examination to be within normal limits, that there was some tenderness to touch (subjective), and slight narrowing between "the last lumbar spine and the first sacral spine," which he attributed to early wear and tear changes of the disc.
*1174 The testimony of the other orthopedic surgeon seen by the plaintiff was not offered. The remainder of the medical testimony, offered in deposition form, dealt with plaintiff's mental state.
Dr. Cyrus Sajadi, a psychiatrist, diagnosed plaintiff as having dysthymic disorder and adjustment disorder with mixed emotions; basically, depression lasting longer than six months. This diagnosis was supported by the written report of a psychologist, Ronald S. Pryer, Ph.D., which was submitted into evidence. Both these gentlemen felt plaintiff was unable to work because of depression.
Finally, the deposition of Dr. Clayton Edisen, also a psychiatrist, offered a contradictory diagnosis of plaintiff's mental state. Concluding that plaintiff was reacting normally to being in a convalescent state with loss of income and earning capacity, Dr. Edisen testified that he did not think plaintiff was actually suffering from dysthymic disorder, which he felt required symptoms of depression in excess of two years.

FINDINGS OF THE TRIAL COURT
In his written reasons for judgment, the trial judge found that plaintiff was both physically and mentally disabled from the accident of January 12, 1982. This finding followed an extensive review of all medical testimony, with the recognition that much of the testimony was conflicting. Based on a thorough review of the record, we find no abuse of the trial court's discretion in its evaluation of the testimony presented, nor any undue emphasis of testimony given by those physicians who evaluated plaintiff for the purpose of this litigation over that of plaintiff's primary treating physician.
In line with his factual findings, the trial judge detailed plaintiff's damages in his written reasons against Massachusetts Bay Insurance Company, the actual uninsured motorist carrier of plaintiff's employer, as follows:

Past pain and suffering $30,000.00
Future pain and suffering 5,000.00
Past medical expenses 7,577.09
Lost wages $30,000.00
 __________
TOTAL $72,577.09

These damages were "subject to a credit by Hanover Insurance Company for any future workmen's compensation benefits that it may be condemned to pay." However, in the judgment which was prepared by counsel for plaintiff and signed by the trial judge, there was no language reflecting the credit.
The question of whether a worker's compensation carrier is entitled to credit for or reimbursement of compensation paid from an uninsured motorist carrier has been answered in the affirmative by our Supreme Court in Johnson v. Fireman's Fund Insurance Company, 425 So.2d 224 (La. 1982), and by this Court in Brown v. Southern Farm Bureau Insurance Company, 426 So.2d 684 (La.App. 1st Cir.1982). According to the language of the trial judge's written reasons, the credit allowed was to apply to Hanover Insurance Company, the compensation carrier, rather than to Massachusetts Bay, the uninsured motorist carrier. This was the correct application of Johnson and Brown; plaintiff-appellant's assignment of error in this regard has no merit.

PENALTIES AND ATTORNEYS FEES
In his original petition and on appeal, plaintiff requested imposition of penalties and attorney fees for an arbitrary and capricious failure to pay pursuant to the terms of its own policy by the uninsured motorist carrier. The trial court did not allow these, and gave no reasons for this decision. In view of the greatly conflicting medical evidence in this case, even among plaintiff's own experts, we find no arbitrariness or capriciousness on the part of the uninsured motorist carrier.

DECREE
The judgment of the trial court is amended to include a credit to Hanover Insurance Company for any worker's compensation benefits it may be condemned to pay in view of the uninsured motorist payments of its subsidiary company, Massachusetts *1175 Bay Insurance Company, and as amended, affirmed.
Costs are assessed against Massachusetts Bay Insurance Company.
AMENDED AND AFFIRMED.
NOTES
[1] In his original petition, plaintiff named Hanover Insurance Company as defendant and alleged it was his employer's uninsured motorist carrier. However, it was actually a subsidiary of Hanover, Massachusetts Bay Insurance Company, which carried the uninsured motorist policy in question; Hanover Insurance Company was the worker's compensation insurer of plaintiff's employer at the time of the accident which is the subject of this suit.
[2] Three other connected cases arose out of this incident. Two of them, Tommy Thomas v. New England Life Insurance Company, and Tommy Thomas v. Maryland Casualty Company, suits numbers 30694 and 30695, respectively, were consolidated with the instant case, and involved plaintiff's own uninsured motorist carrier and medical insurer. Suit number 30218, entitled Tommy Thomas v. RPM Corporation, involved the question of plaintiff's entitlement to worker's compensation benefits, and is not at issue here except insofar as the credit for any future compensation payments was granted to the compensation carrier, Hanover, in view of the judgment against its subsidiary, the uninsured motorist insurer in the trial court below.