498 So.2d 706 (1986)
James A. BURTON, Jr.
v.
John Dudley FORET, Casualty Reciprocal Exchange Co., and Allstate Insurance Co.
Frank LaFaye KEITH
v.
M.B. BEARDEN, Commercial Union Insurance Company, Ouachita Parish Police Jury, et al.
Nos. 86-C-0936, 86-C-1097.
Supreme Court of Louisiana.
November 24, 1986.
*707 Quentin Urquhart, Jr., Montgomery, Barnett, Brown & Read, New Orleans, for applicant.
Stephen LaRussa, Houma, for respondents.
WATSON, Justice.[*]
The common issue in these consolidated tort suits is whether legal interest runs against all parties liable in solido from the day of judicial demand. The Keith case also presents a close quantum question.

FACTS
In Docket Number 86-C-0936, James A. Burton, Jr. filed suit against John Dudley Foret, Jr., and Casualty Reciprocal Exchange Company on May 10, 1982, alleging: injuries in an automobile accident; Foret's negligence; and liability insurance coverage by Casualty Reciprocal Exchange Company. Allstate Insurance Company intervened on September 17, 1982, claiming subrogation rights from its liability policy on the automobile driven by Burton. On October 18, 1982, plaintiff's amending petition added Allstate Insurance Company as a defendant claiming uninsured/under-insured coverage in Allstate's policy. On October 28, 1983, plaintiff's second amending petition named Casualty Reciprocal Exchange Company as a defendant in its capacity as the liability insurer of Burton's father under the uninsured/under-insured provisions of that policy.[1]
Prior to trial, plaintiff settled with tort-feasor Foret and Casualty Reciprocal Exchange Company in its capacity as Foret's liability insurer, reserving the right to proceed against Allstate and Casualty as uninsured or under-insured carriers. Under *708 LSA-R.S. 22:1406, Allstate was the primary uninsured carrier and Casualty's coverage was secondary.[2]
After a jury trial, plaintiff Burton received a judgment for $186,500, limited to the insurers' respective policy limits: $100,000 for Allstate and $50,000 for Casualty Reciprocal Exchange Company. Allstate was cast for a twelve percent penalty on the total amount of the loss, or $22,380 and attorney's fees of $16,500 for arbitrary and capricious refusal to pay plaintiff's claim.[3] All of the awards were made with legal interest from the date of judicial demand until paid, and the defendants were cast for all costs.[4]
After the trial court judgment was affirmed, Casualty filed a rule to show cause why tender of costs, its policy limits, and interest from the date it was named as a defendant should not discharge its liability. The trial court denied the motion, and the court of appeal affirmed.[5]
In Docket Number 86-C-1097, Frank LaFaye Keith filed suit against M.B. Bearden on March 9, 1983, alleging that he was seriously injured when Bearden allowed two horses to run in front of his stationwagon. On March 22, 1983, Comco Insurance Company, the personal liability insurer of Bearden under a homeowner's policy, was named as a defendant. On February 2, 1984, the Ouachita Parish Police Jury was added as a defendant, on the ground that the shoulders of the road were so overgrown that the horses were not visible until they ran into the path of Burton's vehicle. On March 19, 1984, Commercial Union Insurance Company was named as the defendant insurer of the Police Jury.[6]
After a bench trial, the court concluded that Bearden and Comco were strictly liable for plaintiff's injuries under LSA-C.C. *709 arts. 2317 and 2321. In addition, the trial court found that the foliage overhanging the roadway was a contributing cause of the accident. The Police Jury had known of the overgrown condition of the road and had failed to properly maintain the shoulders, creating an unreasonable risk of harm. Concluding that the main cause of the accident was the horses in the road and a secondary cause was the foliage, the trial court apportioned fault eighty percent to Bearden and his insurer Comco and twenty percent to the Ouachita Parish Police Jury and its insurer Commercial Union.
Prior to the accident, Keith was employed as a truck driver by United Parcel Service. He had pre-existing abnormalities in his spine, primarily from degenerative arthritis. However, he was able to function until the accident which rendered him virtually unemployable. The trial court noted that Keith, before the accident, had been a relatively young man of forty-two in apparent good health, robust and active. Keith sustained two ruptured discs and underwent three separate surgeries prefaced by myleograms, CT scans, and other tests. As a result of the surgeries, Keith is dejected, unable to work and no longer engages in physical sports and outdoor activities. He has a fifty-five to seventy percent disability of the body as a whole. Plaintiff was allowed medical expenses of $31,513.33 and property damages of $743.66. The trial court awarded $175,000 for pain and suffering and $175,000 for permanent disability. After discounting to current value, the court fixed future loss of wages at $400,000, and past lost earnings at $40,000. The total was $822,256.99.
The dispute over the quantum award focuses on the amount given for future loss of earnings.
Charles O. Bettinger, III, stipulated to be an expert in the field of economics and statistics and qualified to render an expert opinion on loss of wages, said Keith's yearly income at the time of the accident was $35,051 with fringe benefits amounting to $11,290 or a total of $46,341. Dr. Bettinger averaged Keith's income over three years at $32,867 and estimated his work life at 18.7 years. Dr. Bettinger calculated lost future cash earnings, discounted to present value, at $674,791. In addition, lost fringe benefits would have been $217,350 or a total of $892,141. In this estimate, seven years of payments to a pension fund, any pension which might be lost, Keith's interest in the company's profit sharing plan, and the increase in hospitalization premiums caused by his unemployment were not included.
Assuming that Keith could return to work at a minimum wage,[7] his loss of earnings would be reduced by $164,514.
Dr. Bettinger approximated a four and a half percent inflation rate and a real interest rate after inflation of two percent. Keith had shown strong personal productivity, increasing his wages by seventy-five percent from the first year he worked. During his seven years with UPS, he had had a steady upward climb with an average yearly increase in wages of twelve percent. Dr. Bettinger projected a future seven and a half percent annual increase: four and a half percent for inflation and three percent for productivity. Dr. Bettinger discounted the 18.7 years of work life to exhaust all of the principal and all of the interest at the end of that period. Discounting at six and a half percent, Dr. Bettinger calculated loss of future wages at $773,968 in current dollars.
Dr. Jerry Hood testified as an expert in economics with the ability to make past and future lost income projections. He testified that the discount rate of 6.5% used by Dr. Bettinger was too low and used the return on U.S. Government securities, which was between 8.96% and 11.23%. Subtracting a current inflation rate of three or four percent, he calculated a real interest rate of five to six percent.
*710 In Dr. Hood's opinion, an individual's wages tend to level off between the ages of forty and fifty and may actually decline after that time. He did not apply any inflationary factor or any increase in income to calculate Keith's future loss of wages. Hood averaged Keith's wages for 1983, despite the fact that Keith was injured in 1982 and his productivity was severely reduced by his injuries and medical treatment. Dr. Hood was unaware that Keith's 1983 earnings did not reflect an accurate picture. He did not calculate the value of many of Keith's fringe benefits, including a life insurance policy and double pay for work on holidays, which had been Keith's practice.
Dr. Hood used an income figure of $35,528.60 discounted at 8.96% and an income figure of $37,045.30 discounted at 9.77%. Including fringe benefits, he averaged the two years prior to trial to calculate the yearly loss of earnings at $38,854. Estimating 18.6 years in the work force, he concluded that the present value of Keith's future wages was $407,782. Subtracting a minimum wage, the net economic loss would be $360,819.
Judgment was rendered against defendants Bearden, Comco, the Ouachita Parish Police Jury and Commercial Union Insurance Company in solido for $822,256.99, together with legal interest from the date of judicial demand until paid. The liability of Comco was limited to its policy limits of $100,000 plus legal interest from date of judicial demand. The liability of Commercial Union Insurance Company was limited to $500,000, its policy limits, together with legal interest from date of judicial demand. The Ouachita Parish Police Jury and Commercial Union Insurance Company were decreed liable in solido for legal interest from the date of judicial demand against them rather than the date of judicial demand against defendant Bearden.
The court of appeal[8] concluded that the percentages of fault should be reallocated and fixed that of Bearden at sixty-five percent and that of the Police Jury at thirty-five percent. Noting that the trial court's award of $400,000 for future loss of wages was in the low range, the court of appeal nonetheless concluded that it was not an abuse of discretion.
Because of solidary liability,[9] the first circuit in Burton held that interest ran against the under-insured carriers from the filing of initial suit against the tort-feasor, although the under-insured carriers were named as defendants at a later date.[10] A writ was granted to review the judgment.[11]
In Keith, the second circuit held that, as to the Ouachita Parish Police Jury and its insurer, interest ran from the date they were named as defendants and not from the filing of plaintiff's original demand.[12] A writ was also granted to review that judgment.[13]

LAW
*711 Under LSA-C.C.P. art. 421,[14] the date of judicial demand is the day on which a party files a demand or claim for relief. See Churchman v. Ingram, 56 So.2d 297 (La. App. 2 Cir.1951); Stansbury v. Stansbury, 258 So.2d 170 (La.App. 1 Cir.1972); Nelson v. Nelson, 311 So.2d 268 (La.App. 1 Cir. 1974); Jackson v. Jackson, 322 So.2d 800 (La.App. 1 Cir.1975); Auger v. Auger, 434 So.2d 492 (La.App. 2 Cir.,1983); and Vallee v. Hyatt Corp, 433 So.2d 1070 (La.App. 4 Cir.1983). In tort suits, legal interest attaches from date of judicial demand. LSA-R.S. 13:4203.[15] Interpreting the phrase "date of judicial demand", the first and second circuits rendered conflicting judgments in these two cases.
Cook v. Deshautreaux & Klein Pediatric Clinic, 315 So.2d 405 (La.App. 4 Cir. 1975) decided that LSA-R.S. 13:4203 imposed interest from the date that judicial demand was made against each party cast in judgment, because the later parties were not successors to any previous parties. There was no solidary liability between the initial fictitous defendants, XYZ and ABC, and their later substitutes. Also, Cook found no solidarity between the two individuals initially sued and the corporation, which was substituted as a proper party defendant.[16]Cook distinguished Stewart v. Maloney Trucking & Storage, Inc., 147 So.2d 62 (La.App. 4 Cir.1962), in which an amended petition corrected the name of a closely allied corporation with a similar name.
Ray v. Alexandria Mall, 434 So.2d 1083 (La., 1983) holds that an amending petition, which changes the identity of a defending party or parties, relates back to the original date of filing when: the same transaction or occurrence is involved; there is no prejudice to the substitute defendant; and no new cause of action is asserted.
Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La., 1982) concluded that a tort victim's uninsured motorist carrier is liable in solido with the tort-feasor. Both have the same obligation to repair the damage to the victim even though the uninsured carrier is only liable under certain terms and conditions. Since the solidary obligation between the uninsured carrier and the tort-feasor is from the effect of law, it need not be expressly stipulated as required by LSA-C.C. art. 2093.[17] Because of the solidary obligation, timely filed suit against a tort-feasor interrupts prescription as to plaintiff's uninsured motorist carrier.
Brown v. Southern Farm Bureau Ins. Co.,[18] 426 So.2d 684 (La.App. 1 Cir.1982) cast an uninsured carrier for legal interest in excess of its policy limits from the date of judicial demand under LSA-R.S. 13:4203. Brown states:[19]
"... Any policy provision which attempts to limit the liability insurer's liability for *712 legal interest from the date of judicial demand contravenes the public policy of La.R.S. 13:4203 and cannot be enforced.... Since uninsured motorist coverage is supposed to provide the same coverage as liability insurance, then these same rules should likewise apply to uninsured motorist insurance. Otherwise, the plaintiff who recovers under uninsured motorist insurance will receive less compensation than another plaintiff who recovers under liability insurance."
To the same effect is Jones v. American Fire-Indem. Ins. Co., 442 So.2d 772 (La. App. 2 Cir.1983) which says:
"A judgment against the tortfeasor would have carried legal interest from date of judicial demand. La.R.S. 13:4203. Since the UM carrier is solidarily liable with the tortfeasor, it stands to reason that a judgment against it should also bear legal interest from date of judicial demand rather than date of judgment...."[20]
See Denham v. Bedford, 407 Mich. 517, 287 N.W.2d 168 (1980), which agrees with Brown.[21]
A Massachusetts case, Bernier v. Boston Edison Co., 380 Mass. 372, 403 N.E.2d 391 (Mass.,1980), allowed interest from the date of judicial demand as to a related defendant added after the running of prescription. Bernier reasoned that a plaintiff's entitlement to interest dates from the commencement of his lawsuit and the addition of a transaction-related defendant after the running of the statutory period should not alter the right to recover interest in an ex delicto action.[22] Also see Gill v. North Shore Radio. Assoc., Inc., 385 Mass. 180, 430 N.E.2d 1210 (1982).
Bernier notes that Cook, supra, interpreted LSA-R.S. 13:4203 to impose interest on a party cast in judgment from the date that judicial demand was filed against that party, but attributed the result to the Louisiana rule that an amending petition to correct a misnomer does not relate back to the filing of the original petition. Also crucial to the Cook decision is the absence of solidary liability. Insofar as Cook is contrary to this opinion, it is disapproved.
LSA-C.C.P. art. 1153[23] provides that an amended petition arising out of the "conduct, transaction or occurrence" initially pled relates back to the date of original filing.

CONCLUSION: INTEREST
Under Hoefly, suit against one solidary obligor interrupts prescription as to other solidary obligors. Where defendants are solidarily liable, they are jointly and severally liable for the entire debt, which would include interest from the date on which plaintiff made judicial demand on the first of those parties. Under LSA-R.S. 13:4203, legal interest runs from the date of plaintiff's first judicial claim against all parties responsible for a single tortious occurrence. LSA-C.C.P. art. 1153.
Brown correctly decided that interest from the date of judicial demand under LSA-R.S. 13:4203 is a matter of public policy, and the statute's mandate prevails over any insurance policy limitation. In Burton, both of the under-insured carriers are solidarily liable to the victim. Even though Casualty's coverage is secondary to Allstate's, Casualty would still be liable for its policy limits if Allstate did not pay. Each is liable for the entire debt to the extent of their policy limits. Apportionment *713 between their policies, their several liability, does not prevent each from having a joint, in solido, obligation. LSA-C.C. art. 1798. The fact that one insurer is primarily liable does not alter their positions vis-a-vis the victim. LSA-C.C. art. 1797. "From the viewpoint of the victim ... [both] are solidary obligors." Sampay v. Morton Salt Co., 395 So.2d 326 at 329 (La., 1981). Even though tort-feasor Foret was released prior to trial, plaintiff reserved his rights against the other solidary obligors and the release did not inure to their benefit. Sampay, supra.
The standard policy provision, common to all four insurers in this litigation,[24] allows interest from entry of judgment, but this provision must yield to the Louisiana statutes.[25] See Soprano v. State Farm Mutual Automobile Ins. Co., 246 La. 524, 165 So.2d 308 (1964) and LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245 (1943).

CONCLUSION: DAMAGES, KEITH
The trial court noted the disparity in the expert testimony and Dr. Hood's admitted failure to include fringe benefits in his calculations. Dr. Hood also admitted that he considered plaintiff's lesser earnings during the year in which he was injured. The $400,000 awarded by the trial court for future loss of wages may be, as the court of appeal pointed out, on the low side. It is difficult, and probably impossible, to calculate future lost income down to the last dollar. Too many factors are involved which will vary in the future, for example: discount rates, inflation, and promotions. When the trier of fact has made a "reasonable assessment" based on the evidence, the award should not be disturbed on appeal. The sum allowed here is not so low as to constitute an abuse of discretion. LSA-C.C. art. 1999.[26]

DECREE
For the forgoing reasons, the judgment of the court of appeal in James A. Burton, Jr. v. John Dudley Foret, et al, Docket Number 86-C-0936, is affirmed.
In Frank LaFaye Keith v. M.B. Bearden, et al, Docket Number 86-C-1097, the judgment of the trial court is affirmed as to the quantum, but amended to award interest from the date of judicial demand against all parties cast in judgment.
BURTON v. FORET: AFFIRMED.
KEITH v. BEARDEN: AFFIRMED AS AMENDED.
CALOGERO, J., concurs in result.
NOTES
[*] Judge Lewis Doherty, retired, participated in this decision as Justice Ad Hoc in place of Lemmon, J.
[1] The Casualty Reciprocal Exchange policy issued to James A. Burton, Sr., provides, in pertinent part, that the company will "pay, in addition to the applicable limits of liability: (a) ..., all costs taxed against the insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon; ..." Exhibit P-3, Burton v. Foret, Docket Number 86-C-0936.

Identical language is found in the Casualty policy on John D. Foret, Sr.. Exhibit P-2, Burton v. Foret, supra.
The Allstate policy also has identical language. Exhibit P-1, Burton v. Foret, supra.
[2] LSA-R.S. 22:1406 provides in pertinent part:

"With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
"(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
"(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him....
* * * * * *
"(2)(b) For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident,...."
[3] LSA-R.S. 22:658 provides in pertinent part:

"A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
"B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of loss, of twelve percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, twelve percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount. * * *"
[4] The judgment was affirmed "in all respects" in Burton v. Foret, 484 So.2d 753 at 760 (La.App. 1 Cir.1986).
[5] Burton v. Foret, 487 So.2d 1259 (La.App. 1 Cir.1986).
[6] The Commercial Union policy issued to the Ouachita Parish Police Jury states that the insurer "will pay, in addition to the applicable limit of liability; all expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon." Exhibit P-2, Keith v. Bearden, Docket Number 86-C-1097.

A similar provision is in the Comco policy Exhibit P-1, Keith v. Bearden, supra.
[7] Keith had no particular skills or training other than truck driving. He had done odd jobs prior to his employment at UPS.
[8] Keith v. Bearden, 488 So.2d 1071 (La.App. 2 Cir., 1986).
[9] LSA-C.C. art. 2088 provided:

"The obligation is in solido, or joint and several between several creditors, when the title expressly gives to each of them the right of demanding payment of the total of what is due, and when the payment made to any one of them discharges the debtor, although the benefit of the obligation be to be shared and divided among the different creditors."
The article is now LSA-C.C. art. 1790 and states:
"An obligation is solidary for the obligees when it gives each obligee the right to demand the whole performance from the common obligor."
Also see LSA-C.C. art. 1797, which states a principle developed in the jurisprudence:
"An obligation may be solidary though it derives from a different source for each obligor."
LSA-C.C. art. 1798, which does not change the law, states:
"An obligation may be solidary though for one of the obligors it is subject to a condition or term."
[10] Burton v. Foret, 487 So.2d 1259 (La.App. 1 Cir.1985).
[11] 491 So.2d 13 (La., 1986).
[12] Keith v. Bearden, 488 So.2d 1071 at 1083 (La.App. 2 Cir.,1986).
[13] 491 So.2d 13 (La.,1986).
[14] LSA-C.C.P. art. 421 provides:

"A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction. Amicable demand is not a condition precedent to a civil action, unless specifically required by law."
[15] LSA-R.S. 13:4203 provides:

"Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts."
[16] There was actual notice to the corporation, because the first two individual defendants owned all of the corporate shares. However, actual notice is not the sine qua non for commencement of legal interest in ex delicto actions because filing of a suit asserting a demand is merely constructive notice.
[17] In 1984, LSA-C.C. art. 2093 provided:

"An obligation in solido is not presumed; it must be expressly stipulated.
"This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."
The current article, LSA-C.C. art. 1796, reads as follows:
"Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law."
[18] The author of Brown was Judge, now Justice, Cole.
[19] Brown, supra, 426 So.2d at 689.
[20] Jones, supra, 442 So.2d at 777.
[21] Brown followed Hebert v. Ordoyne, 388 So.2d 407 (La.App. 1 Cir.1980) and disagreed with Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3 Cir.1982), which allowed interest only from the date of judgment.
[22] Bernier recognized an argument for making interest run from the date of injury but decided that the date of judicial demand is a more practical alternative.
[23] LSA-C.C.P. art. 1153 provides:

"When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."
[24] See Footnotes 1 and 6, supra.
[25] LSA-R.S. 13:4203, supra, and LSA-R.S. 22:655, which states, in pertinent part:

"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy."
[26] LSA-C.C. art. 1999 provides:

"When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages."