376 So.2d 548 (1979)
Oddo HUVAL, Plaintiff-Appellee,
v.
Earl SINITIERE and Orkin Exterminating Company, Inc., Defendants-Appellants.
No. 7172.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
*549 Onebane & Associates, James E. Diaz, Lafayette, for defendants-appellants.
J. Minos Simon, Lafayette, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
CULPEPPER, Judge.
This is a suit for damages for personal injuries. The plaintiff, Oddo Huval, was driving in the outside south bound lane of the Evangeline Thruway in the city of Lafayette. This thruway has three lanes for south bound traffic. The defendant Sinitiere was driving in the middle lane. In attempting to make a right hand turn from the thruway, Sinitiere changed to the outside lane, and the right front of his automobile struck the left center of plaintiff's vehicle. Named as defendants are Sinitiere and his employer, Orkin Exterminating Company, Inc. After trial on the merits, the district judge held that the accident was caused solely by the negligence of Sinitiere. From a judgment awarding plaintiff damages totaling $168,300, the defendants appealed. Plaintiff answered the appeal, seeking an increase in the award for general damages.
The sole issue on appeal concerns the awards of (1) the sum of $100,000 in general damages, (2) the sum of $13,837 for loss of past wages, (3) the sum of $45,730 for loss of future wages, and (4) the sum of $6,000 for future medical expenses.
In a written opinion, the district judge has stated the facts fairly and given reasons for various items of the award as follows:
"With regard to Damages, the Court will make the following awards for Special items of damage:

 (1) Property Damage...(damage to automobile $1,004.94
 (2) Medical Expenses:
 (a) Dr. Louis Blanda 298.00
 (b) Dr. Ralph J. Fernandez 95.00
 (c) Dr. Phillip Purpera 60.00
 (d) Our Lady of Lourdes Hospital 1,135.70
 (e) Thrift-T-Way Pharmacy 140.09
 TOTAL $2,733.73

"The evidence adduced during the course of the trial conclusively establishes that Mr. Huval suffered a ruptured disc injury at the level of L-4 and 5. Dr. Blanda's estimate of the cost involved for the surgery required for this kind of injury would be One Thousand Dollars ($1,000.00) for the surgeon's fee and approximately $5,000.00 (Five Thousand Dollars) for the hospital, pharmaceuticals and other necessary medical expenses such as anesthesia fees, lab work and the like. At the time of trial, Mr. Huval had not yet elected to undergo surgery due to the risks that such major surgery involves particularly to a man who is moving on in years. Since surgery is indicated in this case by plaintiff's orthopedic surgeon, the Court will award the total sum of $6,000.00 as future medical expenses.
"The Court in determining what would be a fair and reasonable general damage award takes the following factors into consideration. Mr. Huval was 61 years of age at the time of the accident. He has limited education and in fact had a difficult time understanding some questions asked of him during the course of the trial as well as articulating answers to those questions due *550 to his limited English vocabulary. He had worked for the City of Lafayette for approximately 33 years and at the time of the accident was working in the water department. Through date of trial, Mr. Huval was still wearing an orthopedic corset for his back injury and still taking prescribed medication for his back injury. Mr. Huval testified that he cannot walk for any length of time nor can he sit for any period of time without experiencing severe pain in his back. He testified that he cannot bend over and has a difficult time getting in and out of his automobile. Mr. Huval now has to face the autumn years of his life with a permanent and disabling condition that produces severe and excruciating pain relieved only somewhat by the consistent and daily taking of pain medication. It is common knowledge that disc injury is an unbearable affliction even for the young and otherwise healthy and strong individuals.
"The forecast of Mr. Huval's future is dismal. He testified that he finds the time long, that he is bored. He can no longer engage in his gardening project and the balance of his years, due to his lack of ability to engage in intellectual pursuits will be spent in the confining walls of non-activity, boredom, and nonproductivity due to his physical limitations and permanent disability. The Court finds that an award of $100,000.00 is just and fair compensation for Mr. Huval's past, present and future permanent disabling injury, mental anxiety, anguish and emotional distress. This award of general damages is buttressed by the Third Circuit Court of Appeal decision in Verret v. Chotin Transp., Inc., 356 So.2d 1067, a recent decision in 1978 wherein the Appellate Court approved a $150,000.00 general damage award to Mr. Verret whose age and injuries sustained are identical to Mr. Huval's.
"The issue of loss of earnings is somewhat more complex to resolve than is the issue of general damages in this case.
"The Defendants argued and cited the testimony of Plaintiff in his deposition that it was his intent, prior to the accident and his sustained injuries to work for one more year before retiring with the program offered by the City of Lafayette. During the course of the trial Mr. Huval did reaffirm that prior to his accident that he had in fact intended to retire after he had worked one more year. However, Mr. Huval did testify that he was compelled to retire on October 31, 1977 due to his disabling injury. At the time of the trial Mr. Huval also expressed his apparent disenchantment with retirement and testified to the effect that but for his disabling injury he would certainly seek employment because he was bored and found the time long.
"The controversy before the Court focused on the question of whether or not Mr. Huval's pre-injury declaration of his intent to retire should preclude an award for lost earnings following his forced retirement due to disability on October 31, 1977.
"The Defense contended to the Court that because of Plaintiff's statement in his deposition that it was his intent, prior to sustaining his injuries, to retire after one more year of work that this Court should accept such evidence as proof that Mr. Huval did not intend to engage in gainful employment in the future. On that basis the Court was asked to deny any award for future loss of earnings. In further support of it's position, the Defense argued that the evidence of retirement benefits and social security is admissable as probative of the probability that such benefits would discourage Plaintiff from engaging in future employment and that therefore the evidence of Plaintiff's work life expectancy should not be used as a basis to calculate any future loss of earnings.
"On behalf of Plaintiff, an objection was timely made by counsel to the admission of any evidence relating to Plaintiff's retirement and social security benefits. The basis of the objection was that these were benefits to which the Defendants had contributed nothing and that therefore the Defendants were subject to the collateral source rule and not entitled to benefit from sources of funds to which they had made no contribution. The Court permitted the Defendant to introduce the objected to evidence.
*551 "Upon reflection, the Court considers that it erred in permitting the introduction of such evidence because the end result is to permit the defense to gain substantial benefit from Plaintiff's retirement and social security benefits which is clearly prohibited by the established jurisprudence of this state. Vogt v. Hotard, La.App., 144 So.2d 714; Doerle v. State, La.App., 147 So.2d 776; Reeves v. Gulf States Utilities Co., La.App., 327 So.2d 671.
"The Court must now consider what effect Plaintiff's declared intent to retire prior to his injury has upon his future loss of earnings. While it is true that Plaintiff stated in his deposition that prior to sustaining his injury that it was his intention to retire approximately one year later, Plaintiff testified during the trial that having experienced many months away from his routine of employment that he found non-employment boring and indicated to the Court that were it not for his permanent disabling injuries that he would be working again. The Court finds Plaintiff's testimony to be credible and must conclude that but for his forced retirement due to disability that Plaintiff would have worked for at least his work-life expectancy. Furthermore, the Court does not equate the Plaintiff's pre-injury statement of his intent to retire from his current employment as a declaration of intent not to engage in any gainful employment even though he had elected to retire. It is common knowledge and the Court takes judicial notice of the fact that it often occurs that retired persons do return to the work force. After having worked for 33 years for the same employer with an established work life routine, the Court feels and believes that Mr. Huval experiences a great sense of loss and displacement in no longer being a productive and contributing member of society as a wage earner. To work at something and feel a sense of accomplishment at the days end is as natural in our society as any other basic need of life.
"The evidence established during the course of the trial was that Mr. Huval had a wage earning capacity of $4.88 per hour.
"The Court observes that the calculations of the experts called on behalf of both Plaintiff and the Defense were consistent and very close in determining the lost wages. The Court, relying on the expert called by the Defense, Mr. Boudreaux, awards the amount of $13,837.08 as lost wages from the date of accident to the date of trial. In addition, based on the approximate five year work-life expectancy which both experts agreed upon, the Court will again rely on the expert opinion of Mr. Boudreaux called by the Defense and award future loss of earnings for that period of time in the amount of $45,730.09.
"In recapitulation, the Damage Awards in this matter are:

 (1) Special Damages $ 2,733.73
 (Page 3Reasons for Judgment)
 (2) Future Medical Expenses 6,000.00
 (Page 4Reasons for Judgment)
 (3) General Damages 100,000.00
 (Page 5Reasons for Judgment)
 (4) Lost Earnings
 (Pages 7, 8Reasons for Judgment)
 (a) Date of Accident to trial 13,837.08
 (b) Work-life expectancy 45,730.09
 TOTAL $168,300.90"

As to the award of $100,000 in general damages, we find no abuse of the trial judge's great discretion. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). As to the awards for special damages, we find the trial judge was neither manifestly erroneous nor clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The arguments made by defendants on appeal are substantially the same as those made before the trial judge, and discussed in the district court's written reasons quoted above. We see no need to repeat those arguments here. The arguments have been fairly answered by the trial judge.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants-appellants.
AFFIRMED.