423 So.2d 731 (1982)
Albert Kirk ALEXANDER, Plaintiff-Appellant,
v.
Anita F. LEGER, LeBlanc & Broussard Ford, Inc., and Bellefonte Insurance Company, Defendants-Appellees.
No. 82-262.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1982.
Rehearing Denied January 6, 1983.
*732 Fruge & DeJean, Jack C. Fruge, Jr., Lafayette, for plaintiff-appellant.
Voorhies & Labbe, Mark Bienvenu, Lafayette, for defendants-appellees.
Before DOUCET, LABORDE and YELVERTON, JJ.
DOUCET, Judge.
Plaintiff, Albert Kirk Alexander, filed the instant lawsuit based on an automobile accident which occurred on January 2, 1979. At the trial of the case liability was admitted by defendants, Anita Leger and her insurer, and the authenticity of plaintiff's bills, totalling $7,422.37, representing $6,970.98 medicals and $471.39 property damage, were stipulated to. The parties also stipulated to a letter from the plaintiff's former employer indicating the wages made at the time of the accident. Thus the only issue to be decided by the District Court was the question of damages. After trial on the merits, the matter was taken under advisement by the trial judge. Subsequently, by Minute Entry dated December 22, 1981 the Trial Court found that the plaintiff had suffered a lumbar strain as a result of the accident and awarded Mr. Alexander the sum of $2,010.39, representing $750.00 in general damages, $789.00 in medical damages, and $471.39 in property damages.
The plaintiff filed a timely application for a New Trial, which was denied by the District Court. Subsequently, the plaintiff perfected a devolutive appeal.
The sole issue presented on appeal is whether the trier of fact abused his discretion *733 in the award of damages unto plaintiff-appellant.
The standard of appellate review in cases such as the present was set forth in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) as follows:
"..... [B]efore a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., [304 So.2d 351 (La.1974)] supra; Bitoun v. Landry, [302 So.2d 278 (La.1974)] supra; Fox v. State Farm Mutual Automobile Ins. Co., [288 So.2d 42 (La.1973)] supra; Walker v. Champion, [288 So.2d 44 (La.1973)] supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., [294 So.2d 803 (La.1974)] supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
Although a reviewing court must give great weight to factual conclusions arrived at by the trier of fact and reasonable evaluations of credibility and reasonable inferences of fact, Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La.1978) (emphasis ours), we are not required by the aforementioned principle to affirm the trier of fact's refusal to accept uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979) and cases cited therein. For reasons to follow we find that the trial court clearly abused its much discretion in making the award herein.
The plaintiff was involved in a rear-end collision on January 2, 1979 with the defendant, Anita F. Leger, on Evangeline Thruway in Lafayette, La. Plaintiff was momentarily rendered unconscious by the collision. Mr. Alexander subsequently experienced neck, back and knee pain. Suit followed and the matter was tried on October 20, 1981.
Liability for this accident was admitted by defendant at the trial of the case. Approximately three days after the accident plaintiff went to see his family physician, Dr. Patrick Sonnier, who is engaged in the general practice of medicine in Lafayette. Dr. Sonnier had seen the plaintiff approximately two years prior when he had done a pre-employment physical for the Borden Company. Dr. Sonnier testified that when the plaintiff came to see him following the January 2, 1979 accident, he complained of low back pain and further informed Dr. Sonnier by way of history of having back trouble off and on over a period of approximately one year prior to his visit. Plaintiff told the physician about the accident, however, he did not provide explicit details. Dr. Sonnier stated that in his examination of 1977 he had obtained x-rays on the plaintiff, which established a spondylolysis L-4, which put the plaintiff in a Class 4 category, unsuitable for heavy manual labor, which would not permit him to be hired by the Borden Company. The record indicates that spondylolysis, a defect of the bony architecture of the spine wherein fibral cartilage develops instead of true bone, is often asymptomatic and causes no problem. Trauma can aggravate the condition and make it symptomatic. In this regard, the trial judge noted that 10% of the population functioned well with such a cogenital spinal defect. Dr. Sonnier reexamined the plaintiff on one other occasion following the January 2, 1979 accident, then referred him to Dr. J. Lee Leonard, an orthopedic surgeon.
Dr. Leonard testified that he first saw the plaintiff on January 15, 1979. The plaintiff had brought with him two sets of *734 x-rays, the first being those taken in 1977 and the second set having been taken on January 5, 1979. Both were essentially the same and revealed the spondylolysis, however the expert testimony indicates that the fact the condition has become symptomatic may not be revealed by x-ray. Dr. Leonard performed a complete examination and testified that although plaintiff was "intact" from a neurological standpoint, he was of the opinion plaintiff might have sustained a contusion to his low back. Plaintiff was reexamined nine days later at which time Dr. Leonard felt the condition was improving and he noted no spasm in his patient's back. He was asked to return in two weeks. Again examination revealed no nerve root pain although the plaintiff was complaining of leg pain. Dr. Leonard saw the plaintiff again on April 11, 1979, at which time he found no spasm present in his back, but the patient complained of pain with any motion about the lumbar spine. Dr. Leonard concluded after this examination that he was unable to find any firm pathology about this patient and felt he could offer plaintiff no assistance. Accordingly, Mr. Alexander was released from his care.
On May 23, 1979 plaintiff visited with Dr. Louis Blanda, a Lafayette orthopedic surgeon, and informed him of his spondylolysis. He further informed Dr. Blanda of his accident but made no mention of back pain preceeding the accident, apparently believing that his prior pain was inconsequential when compared to his present suffering. Conservative treatment was recommended which included a prescribed corset and exercises. Mr. Alexander was seen by the doctor again on June 27, 1979, August 22, 1979, and October 29, 1979. At the last of the aforementioned visits an electromylographic study was recommended which was performed by Dr. Norman Anseman on November 2, 1979. The results revealed nerve damage at the L-5 and S-1 level on the right side. Plaintiff missed several subsequent appointments apparently due to his incarceration, addressed more fully hereinafter.
While en route to a scheduled appointment with Dr. Blanda on March 26, 1980, plaintiff was involved in a second automobile accident with a Mr. Mack Crayton.
On April 7, 1980 plaintiff made a fifth visit to his treating physician at which time he related that the second accident had increased his pain but that x-rays taken at the hospital following said accident revealed no accute problems other than the pre-existing spondylolysis. Dr. Blanda felt Mr. Alexander would need a myelogram and probably tomograms of the spondylo. Accordingly, on May 5, 1980, Mr. Alexander was admitted to Lafayette General Hospital for diagnostic studies.
The physician and patient reviewed the test results on May 21, 1980, and the former recommended a decompression laminectomy and a spinal fusion. Three check-up visits followed.
On December 4, 1980, Mr. Alexander was admitted to Lafayette General Hospital for a period of twelve days during which Dr. Blanda performed the laminectomy and pre-operative tomograms were conducted. Following surgery Dr. Blanda noted plaintiff was recovering well from the operation and gave instructions to continue using the brace and remain relatively inactive for a period of about six weeks. Plaintiff was reexamined on February 2, 1981.
When seen on August 5, 1981, plaintiff reported a marked improvement since surgery. Use of the brace was discontinued but Mr. Alexander was advised to restrict himself to light activities.
In testifying about plaintiff's treatment Dr. Blanda noted that he believed Mr. Alexander's complaints to be legitimate. He also felt that, due to plaintiff's condition, he would be prohibited from performing heavy manual labor in the future  the same limitation imposed on plaintiff's employability by Dr. Sonnier during his pre-employment examination relative to his application with the Borden Company.
With respect to non-medical events of plaintiff occurring during the applicable time periods the record indicates that Mr. Alexander encountered difficulties with the *735 law following his employment discharge occasioned by the accident. It appears that plaintiff was involved in criminal activity on at least two occasions prior to trial. As a result of burglary and theft charges the plaintiff was incarcerated on separate occasions for a period totalling approximately nine months.
As we understand the trial court's minute entry explaining its judgment, it did not reject the medical testimony of the expert medical witnesses who corroborated plaintiff's complaints. Rather, the trial court doubted plaintiff's credibility due to his criminal record, prior back problems and subsequent automobile accident. From the review of facts hereinabove we conclude that the trial judge imposed a greater burden of proof than is required by our jurisprudence.
With regard to plaintiff's history of back problems, we observe that plaintiff worked at manual labor without serious difficulty or complaint. The injured plaintiff was obviously in the best position to know his suffering and he constantly ascribed the 1979 accident as causing the pain complained of. We see no reason to doubt his credibility particularly in light of the corroborating medical testimony. Although there were differences of medical opinion, with some physicians being unable to find objective data to support plaintiff's complaints, the evidence preponderates that the accident caused plaintiff's spondylolysis to become symptomatic. In this respect, it is well established that positive findings of medical experts are to be afforded greater weight than negative findings as to the existence or not of a particular condition. Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209, (La.App. 3rd Cir.1982) Docket No. 82-173; Smith v. Highland Ins. Co., 222 So.2d 540 (La.App. 4th Cir.1969). Equally well established is the axiom that aggravation of a pre-existing condition is compensable.
Furthermore, plaintiff's uncontradicted testimony was to the effect that the subsequent accident played a minor role in his back problems. His testimony was corroborated by Dr. Blanda who stated:
".... I do not feel that this last automobile accident which occurred on March 26, 1980 is responsible for a great deal of his problems, but that the initial accident in December of 1978 (January 2, 1979 is the correct date) in which he was involved is the culprit for the aggravation of his spondylolysis."
The difficulty of apportioning causation did not justify the trial judge's award.
Plaintiff's criminal record is of doubtful relevance except insofar as it may be relevant to any claim for lost wages. We are cited to no authority which would permit an adverse inference to be drawn, in a civil proceeding, due to plaintiff's past incarceration, under the circumstances.
Appellant cites the following cases as suggestive of an appropriate award: Verret v. Chotin Transportation Co., Inc., 356 So.2d 1067 (La.App. 3rd Cir.1978); Spain v. Travelers Indemnity Co., 321 So.2d 10 (La.App. 3rd Cir.1975); McDonald v. South Central Bell Telephone Co., 377 So.2d 1044 (La.App. 3rd Cir.1979) and Huval v. Sinitiere, 376 So.2d 548 (La.App. 3rd Cir. 1979). All are inapposite as they involve affirmation of the trial court's award. As aforementioned, only after finding that the trial court's award was clearly inadequate may an appellate court raise the award, and then only to the extent of raising it to the lowest point which is reasonably afforded the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., supra. Furthermore, no two cases are ever fully alike and whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Coco v. Winston Industries, Inc., supra. Thus each personal injury must be evaluated according to its own peculiar facts and circumstances. Wilkinson v. Hartford Accident and Indemnity Co., 421 So.2d 440 (La.App. 3rd Cir.1982) Docket No. 8006; Profit v. Linu, 346 So.2d 253 (La.App. 1st Cir.1977).
*736 As aforementioned, the medical expenses and property damage were stipulated to and the evidence preponderates that they were the result of the accident herein.
Appellant further claims a loss of wages. At the time of the accident plaintiff was employed with a monthly guarantee of $950.00 based on a 60-hour work week. Wages at the time of injury are usually suggestive of future earnings. Coco v. Winston Industries, Inc., supra. We find, that in reasonable probability, the lowest sum the plaintiff would have earned but for his injuries is the amount he earned at the time of the accident. As aforementioned, when plaintiff visited Dr. Blanda on August 5, 1981, he reported a marked improvement and discontinued use of the brace and we construe this as the date upon which plaintiff was returned to his pre-accident status of restricted activity. Thus there was a disability period of approximately 31 months. However, the record is inconclusive as to the length of time during which plaintiff was incarcerated. At the very most, plaintiff was incarcerated for periods totalling 12 months. Therefore, in accordance with rules of restrictive amendment of awards, we feel 12 months should be deducted from the 31 months of disability due to plaintiff's incarceration. Hence, lost wages will be calculated on the basis of 19 months at $950.00 per month.
Finally, under the facts peculiar to this case, we consider an award of general damages in the sum of $15,000.00 to be appropriate.
In conclusion, our review of the record convinces us that the lowest amount which the trial court could have reasonably awarded is $7,422.37 in medical and property damages, $18,050.00 in lost wages, and $15,000.00 in general damages.
For the reasons assigned, the quantum judgment of the district court is hereby set aside, and plaintiff is hereby awarded the sum of FORTY THOUSAND, FOUR HUNDRED SEVENTY-TWO AND 37/100 ($40,472.37) DOLLARS. In all other respects, the judgment of the trial court is affirmed. Defendant to pay all costs.
AMENDED AND AFFIRMED.