494 So.2d 1363 (1986)
Donald BONNER, et ux., Plaintiffs-Appellees,
v.
WATKINS MOTOR LINES, INC., et al., Defendants-Appellants.
Dottie CONQUEROR, Plaintiff-Appellant,
v.
WATKINS MOTOR LINES, INC., et al., Defendants-Appellants.
Nos. 18250-CA, 18251-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1986.
*1364 Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for plaintiff-appellant, Dottie Conqueror.
Robert A. Jahnke, Shreveport, for plaintiff-appellee, Linda Bonner.
Rountree, Cox & Guin by Gordon E. Rountree, Shreveport, for defendants-appellants, Watkins Motor Lines, Inc., William A. Loach and Waco Fire & Cas. Co.
Cook, Yancey, King & Galloway by Brian A. Homza, Shreveport, for intervenor-appellant, American Employers Ins. Co.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
This is an action in negligence brought to recover damages allegedly sustained as a result of an automobile accident. The two cases above entitled arise out of the same set of facts and were consolidated by the trial court. Plaintiff, Linda Bonner, was operating a 1979 Chevrolet Monte Carlo in which her mother, Dottie Conqueror, the other plaintiff herein, was a passenger. Also involved in the accident was an 18-wheel tractor trailer rig operated by William A. Loach, and owned by Watkins Motor Lines, Inc. This collision precipitated a suit by the original plaintiff, Dottie Conqueror, against William A. Loach, Watkins Motor Lines, Inc., his employer, and their respective liability insurers, Waco Fire and Casualty Company, and Atlanta International Insurance Company. Linda Bonner, in a separate suit, brought action against the same defendants.
The trial court found defendant William A. Loach one hundred percent negligent in the cause of the accident. Judgment was awarded in favor of plaintiff Linda Bonner and against William A. Loach, Watkins Motor Lines, Inc., and Waco Fire and Casualty Insurance Company, in solido, in the amount of $5,427.38. Plaintiff Dottie Conqueror was awarded damages in the amount of $144,819.87, which constituted awards for general damages and past medical expenses.
American Employer's Insurance Company, insurer of the Bonner vehicle, intervened in this litigation to collect the sum of $3,904.00, together with legal interest thereon, representing the amount of property damage paid to the Bonners by American.
Dottie Conqueror, William A. Loach, Watkins Motor Lines, Inc. and Waco Fire and Casualty Company appeal.

FACTS
The accident which gave rise to this litigation occurred on April 6, 1981, in the *1365 eastbound lanes of Interstate 20 approximately 300 feet east of the Lakeshore Drive Exit in Shreveport, Louisiana. Plaintiff, Linda Bonner, was operating a 1979 Chevrolet automobile in which her mother, Dottie Conqueror, was a passenger. William A. Loach, also eastbound on Interstate 20, was operating a tractor trailer vehicle, owned by Watkins Motor Lines, Inc. As both vehicles were proceeding eastbound on Interstate 20, an impact or near impact occurred between the two vehicles. As a result, Linda Bonner's vehicle spun out of control and collided with the center guardrail in the median of Interstate 20. The events which led to this accident are disputed by the parties who were the only witnesses to the event.
Linda Bonner testified that she was eastbound on Interstate 20 in the center lane of traffic when she observed the Loach vehicle in her left side mirror overtaking her on the left. Mrs. Bonner further testified that the Loach vehicle changed lanes from the left lane into the center lane causing an impact with her car. As a result of this impact, Mrs. Bonner stated that the steering wheel was knocked out of her hands whereupon her car went into an immediate clockwise spin. She stated that her car then passed behind Loach's vehicle and impacted with the center guardrail of Interstate 20.
William Loach testified differently. Loach testified that he was attempting to change lanes when he heard tires squeeling in the near vicinity of his rig. He then stated that he attempted to "shut his rig down." Loach indicated that the first time he saw the Bonner vehicle was when it was parallel to the cab of his truck. He testified that the Bonner vehicle then skidded in front of his vehicle and struck the center rail of Interstate 20.
Leonidas Denson, accident reconstruction expert and witness for the defense, testified that after visiting the scene of the accident and viewing pictures of the Bonner car, he did not feel that impact occurred between the two vehicles. He further opined that he believed Mrs. Bonner panicked and lost control of her car. He did testify, however, that his reconstruction account would be invalid if no skid marks were found in the area of the accident.
The officer that investigated the accident testified that he observed no skid marks at all. He further testified that he did not know if contact occurred between the two vehicles.
Plaintiff, Dottie Conqueror, alleges that as a result of the accident she struck her head against the inside of the vehicle which ultimately led to injuries including organic brain syndrome, temporal lobe epilepsy, severe depression, paranoia, hallucinations and suicidal and homicidal ideation. She maintains that following the accident she has exhibited bizzare and paranoid behavior, becomes easily upset, has assaulted people with a firearm, and has considerable difficulty completing simple household chores.
The trial court determined that Dottie Conqueror's behaviorial problems were caused by the injuries sustained in the accident. However, the trial court failed to find sufficient proof mandating an award for lost wages. The court based its opinion on the fact that no records, in the form of payroll checks, deposit slips, or tax records, were introduced. The court therefore refused to speculate.
Likewise, the court refused to grant Mrs. Conqueror an award for future medical expenses including the cost of hospitalization and/or nursing home care. In this regard, the court indicated that the preponderance of medical testimony was to the effect that with medication such confinement would not be necessary.
Mrs. Conqueror has appealed the ruling of the trial court on the issue of quantum. William A. Loach, Watkins Motor Lines, Inc., and Waco Fire and Casualty Company also appeal maintaining that the opinion was erroneous in regard to both liability and quantum. American Employer's Insurance Company has appealed solely to protect its rights on appeal and maintains that the judgment of the trial court is correct.
*1366 Plaintiff, Dottie Conqueror, asserts four specifications of error. Her first contention is that the trial court erred in refusing to allow the introduction of medical bills totalling $18,699.65 that were incurred by the plaintiff after the termination of trial but prior to the rendition of the opinion of the trial court. In this regard, she contends that there was unnecessary delay by the trial court in rendering the opinion which created prejudicial circumstances and therefore the trial court should have considered additional medical expenses incurred during the interim.
Secondly, she alleges the trial court erred in failing to make any award for future medical expenses including hospitalization and nursing home costs.
Plaintiff's third and fourth specifications of error assert that the trial court erred in failing to award a sum for past or future loss of income and in failing to award an adequate sum as general damages.
Defendants, William A. Loach, Watkins Motor Lines, Inc. and Waco Fire and Casualty Company appeal on the basis of two assignments of error which first raise the issue of whether the trial court committed manifest error in alloting one hundred percent negligence to defendant William A. Loach and, secondly, whether the sum representing general damages awarded to Dottie Conqueror was excessive.
As a result of these contentions, we are faced with the following issues:
(1) Whether the trial court erred in refusing to reopen the case for the admission of further evidence.
(2) Whether the trial court erred in finding defendant, William A. Loach 100% negligent in causing the accident.
(3) Whether the trial court erred in failing to award special damages representing future medical expenses and lost income, both past and future.
(4) Whether the general damages awarded by the trial court were appropriate.

ADMISSION OF ADDITIONAL EVIDENCE
Appellant, Dottie Conqueror, contends that the trial court erred in refusing to reopen the case for further evidence of medical expenses which were incurred by her after the close of the trial, but before an opinion was rendered.
While we are aware that an unusual amount of time passed between the trial and the rendition of the opinion, we cannot deduce that the court committed manifest error in refusing to allow additional evidence. The decision to reopen a case after all parties have rested for the production of additional evidence is one within the sound discretion of the trial court and will not be disturbed on appeal unless manifestly erroneous. Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970); Armstrong v. State Farm Fire and Casualty Company, 423 So.2d 79 (La.App. 1st Cir.1982); Brass v. Minnieweather, 468 So.2d 611 (La.App. 2d Cir.1985); Dubea v. State, Through Louisiana Department of Corrections, 465 So.2d 245 (La.App. 3d Cir.1985). We are unable to conclude that an abuse of discretion has occurred. Furthermore, a trial court's decision on the issue of future medical expenses contemplates the possibility that further medical expenses will be incurred between the close of trial and the rendition of an opinion.

ASSESSMENT OF LIABILITY
The defendants contend that the trial court erred in assigning 100% of the fault of this accident to William Loach and thereby alloting no negligence whatsoever to Linda Bonner.
In this regard, the defendants adamantly contend that the evidence preponderates that there was no collision between the two vehicles and insist that the accident was at least partially caused by the fact that Linda Bonner panicked in the face of the emergency and abandoned her duty to at least attempt to extricate her vehicle.
In support thereof, the defendants specifically point out that the photographic *1367 evidence, which shows no impact damage to the left front of the Bonner vehicle and no such damage to the right rear of the trailer, contradicts the Bonner/Conqueror version of the accident. They further contend that the photographic evidence of the impact damage contradicts Mrs. Bonner's testimony that an impact with the truck knocked the steering wheel from her hands. They also note that she testified that after the steering wheel was knocked out of her hands that she never attempted to regain control of her car by either applying the brakes or placing her hands back on the steering wheel. They specifically point out her testimony that "I took my feet off everything. I sat back. I thought I was dead."
Defendants rely strongly on Dean v. Travelers Insurance Company, 171 So.2d 708 (La.App. 4th Cir.1965), and Plaisance v. Maryland Casualty Company, 169 So.2d 695 (La.App. 1st Cir.1964), among other authorities, for the proposition that Mrs. Bonner's conduct amounted to negligence. These authorities stand for the proposition that while a motorist confronted with a sudden and unexpected peril need not exercise the wisest judgment, that motorist still has a duty to exercise the care and caution expected of an ordinarily prudent driver under the same circumstances.
The trial court resolved all factual issues with respect to liability against the defendants shortly after the trial and obviously rejected the defendants' position. While defendants' jurisprudence when compared to this record raises significant questions as to whether Mrs. Bonner was at fault in causing the accident, in this instance we are unable to say that the finder of fact was clearly wrong in placing all of the blame on Mr. Loach. The testimony is in direct conflict and there is a sufficient basis for the trial court's determination. We therefore may not disturb that court's decision. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Thus, we affirm the trial court's assessment of negligence. This determination obviates the necessity to consider defendants' claim for contribution from Mrs. Bonner.

GENERAL DAMAGES
Dottie Conqueror apparently suffers from organic brain syndrome (OBS), which the trial court felt was causally related to the accident. As a result of this affliction, Mrs. Conqueror suffers intermittent psychosis which results in paranoid and bizarre behavior, as well as seizures. However, hospital reports indicate that as a result of the accident Mrs. Conqueror only suffered a scalp contusion.
Testimony by Mrs. Conqueror's children and others indicates that she often has delusions under which she exhibits abnormal behavior such as firing a pistol through the floor of her house in an attempt to shoot imaginary people in the basement. The trial court transcript is replete with medical testimony as to her condition.
Dr. Ron Goebel, a neuropsychologist, testified that Dottie Conqueror suffered from organic brain syndrome which he classified as a physical element which can be as real and debilitating as a psychological disorder. He diagnosed Mrs. Conqueror as having paranoid delusions and possible hallucinations as well as disorganization of thought processes. He further opined that she was not employable at the time of the trial and probably never would be. He recommended neurological testing with anti-seizure medication then possible hospitalization or confinement should these be warranted. In Dr. Goebel's opinion, Dottie Conqueror's organic brain syndrome problems could be traced to the automobile accident. He indicated that trauma to the head was a probable cause for the OBS.
Dr. Goebel went on to state that it is not necessary for a patient to be unconscious for a brain dysfunction to be caused by a trauma. However, he did indicate that normally organic brain syndrome occurs in cases where there has been unconsciousness.
*1368 Dr. W.S. Wilkinson, an expert in the field of psychiatry and psychoanalysis, indicated that he saw Dottie Conqueror as a patient following the automobile accident. She was experiencing depression, fears, anxiety, nightmares, etc. After having seen Mrs. Conqueror in the office for three weeks, he admitted her to the hospital due to recurring headaches and abnormal EEG findings as well as a conduction problem in the brain which he believed was of an organic nature.
Dr. Wilkinson's final diagnosis at the time of discharge from the hospital was depression and post-traumatic headaches, post-traumatic neurosis and a hysterical personality disorder. He further testified that Mrs. Conqueror has physical and psychological disorders which he attributed to the automobile accident. Dr. Wilkinson's prognosis included possible improvement for Mrs. Conqueror's depression, but probably not her organic problems. As a result of her condition, Dr. Wilkinson saw Dottie Conqueror about 70 to 75 times and treated her in his office for two years, more or less. He saw her mainly for depression and suicidal thoughts.
In his opinion, Dr. Wilkinson felt that even if a qualified neurosurgeon saw Dottie Conqueror immediately after the accident, he may not have caught the OBS due to the fact that the condition sometimes takes time to develop. He also stood by his opinion even though other doctors found no evidence of organic brain syndrome in their evaluation.
Dr. Fox testified as an expert in the area of orthopedic surgery. He first saw Mrs. Conqueror on June 1, 1981, with complaints of neck and back pain as a result of the auto accident. He diagnosed her condition as a cervical sprain. He testified that for a 14 month period he did not see Mrs. Conqueror. She returned in September of 1982, complaining of two episodes where she had "passed out" despite the fact that she was then taking Dilantin for that problem. He said at that time there was no indication that she was suffering from toxic brain syndrome as a result of extensive drug use.
As a specialist in internal medicine, Dr. J.D. Wilkinson testified concerning various medications that had been prescribed for Mrs. Conqueror. He stated that her complaints were inconsistent with the reports of the emergency room physicians but were consistent with psychiatric problems.
Dr. Heinz Faludi, neurosurgeon, saw Dottie Conqueror on April 10, 1981, on a referral basis. He received a history of complaints including headaches, dizziness, nausea, blurring of vision and a nosebleed for three days. The plaintiff also complained of nervousness and irritability and indicated that in the accident she injured her head causing swelling, immediate confusion, and some memory loss. Dr. Faludi conducted a neurological exam of Dottie Conqueror in his office. He found her mentally alert and fully oriented in all fields with tenderness and a slight swelling of the right side of her head. He diagnosed that she was slightly tense but without evidence of delusions or hallucinations. He noted contusions to her head of a mild degree, a cervical sprain, a blow to the nose area, and contusions to the chest area.
He next saw Mrs. Conqueror two weeks later at which time she said that her headaches and other complaints were much relieved. Mrs. Conqueror had negative neurological exams the next two times Dr. Faludi saw her. She resumed her household chores but complained of occasional headaches when not on pain medicine. On May 21, 1981, Dr. Faludi described plaintiff as cheerful and feeling well. On May 28, 1981, plaintiff was exercising, cooking and doing most of her household chores. Dr. Faludi believed at that time that she could return to work as a sitter and he discharged her at this time with no permanent disability. He indicated that he never saw any evidence of organic brain syndrome.
Dr. Faludi said it is unusual for a person who was not rendered unconscious to later develop OBS. He had reservations concerning that diagnosis but did agree that *1369 Mrs. Conqueror may have psychological problems.
At defense counsel's request for reexamination, Dr. Faludi saw Mrs. Conqueror again in 1984, at which time her complaints, he felt, were exaggerated so that they were compatible with psychological problems rather than with a physical neurological condition.
Plaintiff's primary treating psychiatrist at the time of trial, Dr. Joe Ben Hayes, first saw Mrs. Conqueror on March 20, 1984. He testified that at that time Mrs. Conqueror was suffering from post-traumatic organic syndrome with intermittent psychosis. He expressed the belief that she will need to exist in a structured environment due to her condition. Dr. Hayes stated that in his opinion, based on the history that he received from family members and other physicians, he believed the accident in question caused Mrs. Conqueror's condition. He added that Mrs. Conqueror may also be suffering from temporal lobe epilepsy. He testified that Dr. Gaddis, who saw her in the hospital in May of 1984, also diagnosed her problem as temporal lobe epilepsy.
Dr. Gaddis believed that there was nothing else in Mrs. Conqueror's history besides the trauma sustained in the accident that could have caused her condition.
The defendants contend that the accident and resulting injuries were insufficient to cause Mrs. Conqueror's organic brain problems. However, as the trial court noted, the minimal force of the collision is of no material importance. Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir.1981); Seegers v. State Farm Mutual Automobile Insurance Company, 188 So.2d 166 (La.App. 2d Cir.1966).
We are of the opinion that on this record the trial court was not manifestly in error in determining that Mrs. Conqueror's injury was caused by the accident in question. We therefore now turn to the question of compensation for plaintiffs' injuries as a result of this accident.
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Coco v. Winston Industries, Inc., 330 So.2d 649 (La.App. 3d Cir.1976), reversed as to quantum, 341 So.2d 332 (La. 1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Winterrowd v. Travelers Indemnity Company, 452 So.2d 269 (La.App. 2d Cir.1984); Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir.1982), writ denied, 414 So.2d 1253 (La. 1982); and Greene v. Wright, 365 So.2d 551 (La.App. 1st Cir.1978). Moreover, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stephens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., supra; Winterrowd v. Travelers Indemnity Company, supra; Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir.1982); Greene v. Wright, supra.
The appropriate procedure for testing whether the trier of fact abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by a fact finder. The converse of this rule is also true: In determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Wilson v. Aetna Casualty and Surety Company, 401 So.2d 500 (La.App. 2d Cir.1981). Further, we note the cautionary language of Reck v. Stephens, supra, to the effect that an appellate *1370 court must reach a determination that the trier of fact abused its discretion before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award.
Having determined that the trial court was not manifestly in error in attributing plaintiff's medical condition to the accident in question, the issue obviously becomes whether the sum awarded is the lowest acceptable sum which the trial court could assess on the evidence. Our review fails to reveal an abuse of discretion in the sum awarded for general damages to Mrs. Conqueror.

SPECIAL DAMAGES
The trial court rejected claims for future hospitalization and/or institutionalization by Dottie Conqueror. The court indicated that while there had been some testimony that Dottie Conqueror may in the future require hospitalization or other confinement, the preponderance of the medical testimony was to the effect that with medication such confinement would not be necessary.
We therefore determine that the trial court was not manifestly erroneous in declining to award a sum representing the future hospital and/or confinement expenses.
Although we are aware that testimony was in conflict as to the possibility of future confinement, we note that all experts are in agreement that some treatment will be necessary. The trial court transcript is replete with medical testimony to the effect that Mrs. Conqueror will require some form of future and continued psychiatric treatment. Her present condition indicates that at least psychotherapy and medication are indicated. We therefore determine that the trial court did commit manifest error by failing to award future expenses in this regard.
Where an exact estimate of damages cannot be made, but where there is a right to recovery, the court has discretion to assess damages according to the facts and circumstances of the case. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 157 (1971); Cushman v. Fireman's Fund Insurance Company, 401 So.2d 477 (La.App. 2d Cir.1981).
Based on the testimony of Dr. Harju, an economist, that Mrs. Conqueror's further life expectancy is approximately 26.3 years, and a review of the medical testimony, we determine that an award of $20,000 is appropriate under the circumstances for future medical expenses.
Turning now to the question of lost wages, we determine that the medical testimony shows that Mrs. Conqueror is more likely than not unemployable as a sitter at the present and in the future due to her mental condition.
In refusing to award damages for lost wages, the trial court relied on the lack of evidence from the plaintiff or her employer in the form of payroll checks, deposit slips or tax records. However, there was affirmative uncontradicted testimony that the plaintiff was employed at the time of the accident at $4.00 an hour as a medical sitter. Moreover, her daughters testified to her consistent work record as a sitter. The plaintiff also produced testimony from Dr. Harju that Mrs. Conqueror's work life expectancy was approximately 6.8 years. It is apparent from the record, however, that medical sitting is often not steady work. We think the lack of specific documentation of earnings in the instant case is strong evidence that the plaintiff was only sporadically employed as a sitter.
The burden of proving lost wages lies with the claimant thereof just as it does with any other damage award. However, when there is clear, uncontradicted evidence of the fact that plaintiff was indeed employable, the lack of specific records is not fatal to their claim. Any proof which reasonably establishes the claim may be used in absence of mathematical certainties. Ortigo v. Merritt, 488 So.2d 1051 (La.App. 2d Cir.1986); Pringle v. Williamson Chevrolet, Buick and Pontiac, Inc., 480 So.2d 929 (La.App. 2d Cir.1985).
*1371 Thus while the lack of employment records seriously weakens plaintiff's claim in this regard, we determine that the record preponderates that plaintiff is entitled to a minimal award of $20,000 representing lost income, both past and future.
For the reasons stated herein, it will therefore be necessary to amend the trial court judgment to provide for the items of special damages aforesaid. The first paragraph of the trial court judgment following the preamble is therefore amended to show judgment in favor of the plaintiff, Dottie Conqueror, and against the defendants, William A. Loach, Watkins Motor Lines, Inc., and Waco Fire and Casualty Insurance Company, in solido, in the sum of One Hundred Eighty Four Thousand, Eight Hundred Nineteen and 87/100 ($184,819.87), with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings. All costs of this appeal are assessed to defendants.
AMENDED, and AS AMENDED, AFFIRMED.