499 So.2d 462 (1986)
Carolyn M. LINDSAY, Plaintiff-Appellant,
v.
Alvin TOYS, Individually and as Administrator of the Estate of the Minor, Michael D. Toys and Safeco Insurance Company, Defendants-Appellees.
No. 18161-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
*463 Richie & Richie by Byron A. Richie, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Charles G. Tutt, Timothy B. Burnham, Shreveport, for defendants-appellees.
Before JASPER E. JONES, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
This litigation arises as the result of an intersectional automobile collision. The plaintiff-appellant, Carolyn Lindsay, instituted suit against Alvin Toys, Individually and as Administrator of the Estate of the Minor, Michael D. Toys, and Safeco Insurance Company, the insurer of Alvin Toys and Michael D. Toys.
After a trial, the jury returned a verdict in favor of the appellant for a total sum of $3,500.00, including medical expenses in the amount of $1,297.29. The appellant now appeals that judgment asserting that the jury abused its discretion in arriving at this award. For reasons expressed herein, we amend the district court judgment by granting an increase in the award and affirm as amended.
The appellant, Carolyn Lindsay, was injured in a motor vehicle accident on June 28, 1984, at the intersection of Jewella Avenue and Amelia in Shreveport, Louisiana. This accident occurred when a 1971 yellow Volkswagen owned by Alvin Toys and driven by Michael D. Toys, the minor son of Alvin Toys, attempted a left-hand turn in front of the appellant's vehicle while appellant was driving down Jewella Avenue. As a result of the accident, appellant's 1979 Buick LeSabre was rendered a total loss and appellant suffered personal injuries.
On February 5, 1986, this matter was presented to a jury to determine the sole issue of the quantum of damages to which the appellant was entitled.[*] The only testimony at the trial was that of the appellant and two of her friends. The parties stipulated that the appellant's medical bills totalled $1,297.29. In addition, the deposition of Dr. William S. Bundrick, appellant's treating orthopedic surgeon, was introduced along with the report of another physician.
The record indicates that the appellant's injuries consisted of a blow to the head, contusions of the left arm and general contusions and abrasions, as well as the primary injury, a moderate ligamentous strain of the neck. Appellant was never hospitalized and missed only one day from work. She endured a total of eight or nine doctor visits and some physical therapy treatments as a result of the accident.
Appellant first saw Dr. Risinger the day after the accident. He diagnosed her condition as described above and prescribed moist heat and pain medication. Appellant returned a few days later continuing to complain of pain and discomfort in her neck. Dr. Risinger therefore advised appellant to seek orthopedic consultation.
Appellant first saw Dr. Bundrick on July 12, 1984. Dr. Bundrick found that appellant had suffered a myoligamentous cervical strain (neck strain). He noted her subjective complaints of pain and muscle tightness, but he did not detect any muscle spasm. Dr. Bundrick injected appellant with cortisone and xylocain, prescribed pain medication, and referred her to physical therapy.
During the remainder of 1984, appellant saw Dr. Bundrick on three occasions, August 2, August 30, and November 29, 1984. Dr. Bundrick noted continued improvement during this period but consistently found tightness and inflammation. He particularly noted diminished range of motion on November 29. Cortisone injections were administered on the latter two visits.
*464 Dr. Bundrick saw the appellant three times in 1985, in March, April and November. On all of those occasions, appellant complained of pain and the doctor administered a cortisone injection. Dr. Bundrick also detected muscle spasm on one visit and decreased motion on two visits. He continued to characterize appellant's injury as a moderate cervical strain.
In summary, the uncontradicted medical testimony showed that each time appellant visited Dr. Bundrick over an eighteen month period, she complained of pain and discomfort in her neck and shoulder. During several visits, Dr. Bundrick observed tightness in appellant's neck and shoulder muscles, and on one visit, he observed a definite area of palpable muscle spasm. Dr. Bundrick treated Ms. Lindsay by giving her injections of xylocain and cortisone on at least six of the seven visits to his office. Furthermore, he prescribed physical therapy, which appellant underwent for several weeks. He also suggested some stretching exercises to relieve the symptoms and pain.
The appellant testified that at the time of the accident she was 40 years old and employed as a receptionist at the Caddo Parish District Attorney's Office. Ms. Lindsay stated that her resulting injuries affected her work, recreational activities, and certain daily habits. She held three different jobs during the twenty months between the accident and the trial. As a receptionist at the District Attorney's Office, appellant suffered pain while typing and answering phone calls because of the strain caused in her neck. As a sales representative at Cheese House and later Glassier Wholesale Liquor, appellant found that both the required in-town driving and the stocking of shelves were very painful to her neck and shoulder.
Moreover, appellant claims that she no longer rides horses or plays tennis because of the pain and the possibility of re-injury. Appellant also contends that she must now use a curling iron on her hair instead of heat rollers because the latter requires the use of both hands over her head, which causes tension in her neck and shoulder. Finally, appellant asserts that she no longer carries a shoulder strap purse because it causes pain in her neck and shoulder.
Ms. Lindsay's two friends, Judy Shoemaker and Janey Jones, corroborated much of her testimony as to her complaints of pain and their observations of her condition.
Based on the evidence presented, Ms. Lindsay argues that the general damage award of $2,207.71 is so low as to constitute an abuse of discretion.
The law with respect to review of a quantum award was recently reviewed by this court in Bonner v. Watkins Motor Lines, Inc., 494 So.2d 1363 (La.App. 2d Cir.1986).
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Coco v. Winston Industries, Inc., 330 So.2d 649 (La. App. 3d Cir.1976), reversed as to quantum, 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Winterrowd v. Travelers Indemnity Company, 452 So.2d 269 (La.App. 2d Cir.1984); Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir. 1982), writ denied, 414 So.2d 1253 (La. 1982); and Greene v. Wright, 365 So.2d 551 (La.App. 1st Cir.1978). Moreover, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., supra; Winterrowd v. Travelers Indemnity Company, supra; Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir.1982); Greene v. Wright, supra.

*465 The appropriate procedure for testing whether the trier of fact abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by a fact finder. The converse of this rule is also true: In determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Schexnayder v. Carpenter, 346 So.2d 196 (La. 1977); Wilson v. Aetna Casualty and Surety Company, 401 So.2d 500 (La. App. 2d Cir.1981). Further, we note the cautionary language of Reck v. Stevens, supra, to the effect that an appellate court must reach a determination that the trier of fact abused its discretion before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award.
That a factfinder is given much discretion in its award of damages is so axiomatic in our law as not to require citation. However, despite the great deference given the factfinder, a jury in this case, we find that, based on the record taken as a whole, the award of $2,207.71 for general damages is clearly insufficient to compensate this appellant adequately for her injuries. It thus becomes our task to determine the lowest award which could reasonably have been affirmed. Coco v. Winston Industries, Inc., supra.
Appellant particularly argues that we should consider Hebert v. Domingue, 473 So.2d 120 (La.App. 3d Cir.1985), writ denied 477 So.2d 708 (La.1985), for the purpose of determining quantum. After examining this case, we find that it is not analogous to the case at bar for purposes of quantum, because the injuries in Hebert v. Domingue were significantly more severe and the treatment was more extensive.
Indeed, as the Hebert v. Domingue court noted at page 127, quoting Alexander v. Leger, supra:
[N]o two cases are ever fully alike and whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Thus each personal injury must be evaluated according to its own peculiar facts and circumstances.
All of the factors in this cause considered, we determine that the lowest possible award for general damages for the injuries sustained by this plaintiff is $4,500.00 which sum plaintiff should receive in addition to the stipulated special medical expenses of $1,297.29.
We are influenced in our determination by the fact that the jury received all medical evidence by either deposition or written medical report and thus we are not bound to give the jury's determination with respect to that evidence the same degree of consideration as if that evidence had been received live. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied 462 So.2d 1247 (La.1985); Ortigo v. Merritt, 488 So.2d 1051 (La.App. 2d Cir.1986).
We, therefore, hereby amend the judgment of the trial court and increase that judgment to $5,797.29. As amended, the judgment of the trial court is affirmed at defendants' cost.
AMENDED and AS AMENDED, AFFIRMED.
NOTES
[*] Liability had previously been conceded.