CRAIN, J.
12This is the appeal of a judgment in a medical malpractice action arising out of *43 the death of an infant. We reverse in part, vacate in part, amend, and as amended, affirm.
FACTS AND PROCEDURAL HISTORY
Alex Ducre, Jr. was born at Slidell Memorial Hospital and Medical Center on Wednesday, October 11, 2000, at 8:41 a.m. Shantell Washington went into premature labor and gave birth to Alex at a gestational age of 35 weeks and 6 days. Dr. Phyllis D. Waring was the attending pediatrician, providing coverage for Washington’s chosen pediatrician, Dr. Helen Stevenson.
Washington’s membrane ruptured approximately 37 hours before Alex was born, placing Alex at risk for infection. While Dr. Waring’s initial examination of Alex did not reveal any significant abnormalities, Dr. Judith Zatarain, a neonatologist, was consulted due to the infection risk. Dr. Zatarain’s examination shortly after Alex’s birth revealed a well “near-term” baby. She recommended serial CBC blood work to monitor for any infection. No infection developed, and Dr. Zatarain was not further involved in Alex’s care during this hospitalization.
Dr. Waring examined Alex Thursday morning and he appeared to be doing well. On Thursday night at 9:00 p.m., an attending nurse noted that Alex, for the first time, was jaundiced, a condition causing a yellowing of the skin. The medical testimony established that jaundice is a manifestation of excessive bilirubin in the bloodstream, or “hyperbilirubinemia,” and often occurs in newborn infants until the liver develops sufficiently to filter the bilirubin from the infant’s system. Although jaundice is not uncommon in newborn infants, the timing of its onset is important, particularly with a premature infant, because unresolved hyperbilirubinemia can lead to a serious condition called “kemic-terus,” a form of brain damage.
|sThe nurse did not notify Dr. Waring of the jaundice. However, Dr. Waring testified that nurses normally would not immediately report such a finding unless it was accompanied by other symptoms such as sleepiness, not eating, not drinking, or not voiding, none of which was identified by the nurse. Dr. Waring saw no need for the nurse to notify her that night since she would be examining Alex the following morning.
Dr. Waring examined Alex on Friday, October 13, 2000, at 9:00 a.m., the day he was discharged from the hospital. She conducted a “head to toe” examination and found no abnormalities, but noted “mild jaundice.” Alex and Washington were discharged with instructions to make a followup appointment with Dr. Stevenson and to contact Dr. Stevenson if Alex’s condition changed. Washington was also instructed to place Alex in indirect sunlight periodically for no more than thirty minutes, which, according to the medical evidence, helps remove excessive bilirubin from the body. According to Washington, there were no particular concerns expressed about Alex when he was discharged from the hospital.
After discharge, Alex was placed in indirect sunlight as the nurse instructed, and his physical condition appeared fine until Monday afternoon, October 16, 2000. At that time, Washington noticed that Alex was more sleepy, was not nursing as long, and had developed yellow spots in his eyes. Concerned, she called the hospital nursery and spoke to a nurse who asked if Alex was eating and voiding. Washington confirmed that he was, and the nurse advised her to keep a previously scheduled appointment the following morning with the lactation nurse and to call if anything changed.
*44 The next morning Washington noticed Alex’s skin was more yellow, almost orange, and the whites of his eyes were mostly yellow. She presented Alex at the scheduled appointment with the lactation nurse, who noted that Alex was [Jaundiced all over, lethargic, and had poor muscle tone. Washington was told to bring Alex immediately to Dr. Stevenson’s office. Dr. Stevenson then performed a lumbar puncture and admitted Alex to a pediatric intensive care unit with an extremely high bilirubin level of 44.8.
An exchange transfusion was attempted but did not work, and the next day Alex was transferred to Children’s Hospital in New Orleans, where he underwent an exploratory laparotomy and other procedures. One of his lungs collapsed, his kidneys began to fail, and he was placed on life support. His condition became terminal, and the decision was made to remove the life support. Alex died on October 20, 2000, nine days after his birth. The cause of death was kernicterus, secondary to hyperbilirubinemia.
On October 2, 2001, Washington and Alex’s father, Alex Ducre, Sr., filed a request for a medical review panel to review the care provided by one of the physicians at Children’s Hospital. The claim was amended on May 15, 2002, to request review of the care provided by Dr. Waring and Slidell Memorial Hospital. This medical review panel rendered a decision on May 29, 2003, with two members finding no breach of the standard of care by Slidell Memorial Hospital or Dr. Waring, and one member, Dr. Harold R. York, finding a breach of the standard of care by both providers that was a factor in the resultant damage. Although Dr. York found three deviations from the standard of care by Dr. Waring, he ultimately conceded that, in his opinion, only one of those deviations contributed to Alex’s death, specifically, Dr. Waring’s failure to obtain a “bilirubin on a clinically jaundiced premature infant, 48 hours old.” Dr. York also found that Slidell Memorial Hospital deviated from the standard of care because the attending nurses should have notified Dr. Waring of Alex’s “abnormal respiratory rate of 68 at the time of discharge.”
DAfter the parties learned that one of the original panel members had a prior employment relationship with Dr. Waring, another panel was formed to review the claims. On January 16, 2007, the new panel found no deviations from the standard of care by either Dr. Waring or the hospital. The reasoning as to Dr. Waring was “[i]t was not the standard of care in 2000 to order a baseline bilirubin in a 48-hour-old infant with minimal jaundice.”
Washington and Ducre then sued Dr. Waring and Slidell Memorial Hospital asserting breaches of the standard of care in the treatment of Alex that caused or contributed to his death. Both defendants requested a trial by jury, however, Washington and Ducre filed into the record the following stipulation signed by them and their attorney:
Now Into Court, through undersigned counsel, come Shantell Washington and Alex Ducre Sr., Individually and on behalf of Alex Ducre, Jr., who hereby stipulate that the cause of action of each plaintiff does not exceed $50,000.00 exclusive of interest and costs.
The matter proceeded to a two-day trial by a judge. The plaintiffs relied upon the testimony of Dr. York, who opined that Dr. Waring deviated from the standard of care by not determining Alex’s bilirubin level through a blood test prior to his discharge and that Washington should have been instructed at discharge to follow up with her pediatrician the next day. According to Dr. York, Dr. Waring’s deviations from the standard of care caused or contributed *45 to Alex’s death. Regarding the hospital, Dr. York testified that the nursing staff breached the standard of care by failing to notify Dr. Waring of the first observation of jaundice at approximately 37 hours of age and of the rise in Alex’s respiratory rates above 60 breaths per minute.
The defendants countered with the opinion of the second medical review panel and the testimony of Dr. Waring, Dr. Nicholas Danna, III, and Dr. Zatarain. |fiThese doctors testified that the standard of care in 2000 did not require a bilirubin test prior to Alex’s discharge.
After taking the matter under advisement, the trial court rendered judgment against both defendants and in favor of: (1) Washington in the amount of $50,000.00, (2) Alex Ducre, Sr. in the amount of $50,000.00, and (3) the “Estate of Alex Ducre, Jr.” in the amount of $50,000.00, The awards included interest from the date of judicial demand. In written reasons, the trial court found that Dr. York’s testimony was the most credible and agreed that Dr. Waring breached the standard of care by not ordering a biliru-bin test for a “jaundiced, high-risk, premature infant,” and by failing to instruct Washington to have Alex examined by a pediatrician within two to three days of his hospital discharge. The trial court found that Slidell Memorial Hospital breached the standard of care when its nurses failed to mention to Dr. Waring the first observation of jaundice and failed to report that Alex’s “temperature had not stabilized,” both of which “delayed treatment of Alex and contributed substantially to his death.”
Dr. Waring appealed the judgment and assigned the following as errors: (1) the award of $50,000.00 to “the Estate of Alex Ducre, Jr.,” (2) the failure to allocate fault among the defendants, (3) the finding that the standard of care required Dr. Waring to order a bilirubin test, (4) the finding that Dr. Waring’s discharge instructions were inadequate, and (5) the failure to impose comparative fault on Washington. Slidell Memorial Hospital appealed and assigned the following as errors: (1) the finding that Alex had “temperature instability” and that the hospital breached the standard of. care by not reporting it to the treating physician, (2) the finding that Sli-dell Memorial Hospital breached the standard of care in failing to notify Dr. Waring of the appearance of jaundice, and (3) the finding that the nursing staffs failure to notify Dr. Waring of the jaundice ^contributed substantially to the infant’s death. The hospital also assigned as error the award to the “Estate of Alex Ducre, Jr.”
Washington and Ducre answered the appeal and asserted that the trial court erred in awarding legal interest from the date of judicial demand instead of the date of the filing of the medical review panel.
LAW AND ANALYSIS
A. Fault and Causation
We first consider the assignments of error concerning the trial court’s findings of fault and causation. In a medical malpractice action, the plaintiff must prove by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the violation of the standard of care and the claimed injuries. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228, 1233; see also La. R.S. 9:2794.A. Resolution of each of these inquiries are determinations of fact which should not be reversed on appeal absent manifest error. Martin v. E. Jefferson Gen. Hosp., 582 So.2d 1272,1276 (La.1991).
Expert testimony is generally required to establish the applicable standard of care and whether that standard of care *46 was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Pfiffner, 643 So.2d at 1233-34. Where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Adams v. Rhodia, Inc., 07-2110 (La.5/21/08), 983 So.2d 798, 806. Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Adams, 983 So.2d at 806-807. Indeed, where the fact-finder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Adams, 983 So.2d at 807. 18This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. Adams, 983 So.2d at 807. Where expert witnesses present differing testimony, it is the responsibility of the trier-of-fact to determine which evidence is the most credible. Graf v. Jim Walter Homes, Inc., 97-1143, (La.App. 1 Cir. 5/15/98), 713 So.2d 682, 691.
The defendants argue that the trial court should have given greater weight to the testimony of the defense experts because they were more qualified and two were treating physicians. In its reasons for judgment, the trial court stated, “WZhile Defendants’ expert witnesses make good points, this Court finds Dr. York’s testimony to be the most credible.” We find no abuse of discretion in this determination.
Neither defendant objected to the tender and acceptance of Dr. York as an expert in the field of pediatric care. He practiced in the field of pediatrics in the greater New Orleans area since 1973 and is an associate clinical professor of pediatrics at the LSU School of Medicine. He served as the chief of the pediatric departments for Methodist Hospital and Humana/Lakeland Medical Center. In support of his opinions, he cited excerpts from Nelsons Textbook of Pediatrics, which suggested that a bilirubin test should be performed for a premature infant who developed jaundice within 36 hours of birth. Dr. Danna described Nelsons as an “excellent reference,” and Dr. Zatarain said she would defer to Nelsons “as a standard.”
The plaintiffs also presented a document to Dr. Zatarain bearing her name and captioned “NICU Goals and Objectives 2nd years” that was used for training medical students. Dr. Zatarain acknowledged the document indicated a jaundiced, premature infant should undergo a bilirubin test. One particular area of disagreement among the experts was whether Alex was a higher-risk “premature infant,” or a lesser-risk “near-term” infant. The plaintiffs presented a practice |aguideline from the American Academy of Pediatrics that supported Dr. York’s opinion that an infant born under 37 weeks of gestation was a premature infant.
The expert testimony concerning the standard of care applicable to Dr. Waring was conflicting. The trial court’s responsibility was to determine which evidence was the most credible. Graf, 713 So.2d at 691. The trial court expressly found Dr. York’s testimony more credible, and we must give great deference to that finding. Presented with two permissible views of the evidence, the trial court’s choice between them cannot be manifestly erroneous. Adams, 983 So.2d at 806. Accordingly, we find the trial court did not commit manifest error in accepting Dr. York’s testimony that Dr. Waring’s care deviated from the standard of care and those deviations caused or contributed to Alex’s death.
Dr. York’s testimony concerning Slidell Memorial Hospital was limited to two criti *47 cisms: (1) the failure of the attending nurse to notify Dr. Waring of the finding of jaundice at 9:00 p.m. on October 12, 2000, the night before Alex’s discharge; and (2) the failure to notify Dr. Waring when Alex’s respiration rate rose above 60 breaths per minute during the last 23 hours of the hospitalization. In the written reasons for judgment, the trial court found that the hospital staff breached the standard of care by failing to report the jaundice and failing to report that Alex’s “temperature had not stabilized,” but made no findings regarding the respirations.
In reviewing the correctness of the trial court’s judgment against the hospital, we are not limited to the written reasons for judgment. It is well settled that appeals are taken from judgments, not written reasons, and if the trial court reached the proper result, the judgment should be affirmed. Elliott v. Elliott, 10-0755 (La.App. 1 Cir. 9/10/10), 49 So.3d 407, 416 n. 3, writ denied, 10-2260 (La.10/27/10), 48 So.3d 1088. Therefore, we -will examine each of the theories of | ^recovery against the hospital to determine whether the trial court erred in finding the hospital liable.
In a medical malpractice action against a hospital the plaintiff must prove that the defendant owed the plaintiff a duty to protect against the risk involved, that the defendant breached that duty, that the plaintiff suffered an injury, and that the defendant’s actions were a substantial cause-in-fact of the injury Smith v. State through Department of Health & Human Resources Administration, 523 So.2d 815, 819 (La.1988).
First, we find no manifest error in the trial court’s finding that the failure to report the jaundice was a breach of the standard of care. That finding is supported by direct testimony of Dr. York that the attending nurse should have immediately reported this information to Dr. Waring.
Second, there is no basis in the record to support the finding that the nursing staff breached the standard of care by not reporting that Alex’s “temperature had not stabilized.” No testimony was provided by any expert, including Dr. York, that Alex actually experienced temperature instability or that any instability should have been reported to Dr. Waring, The medical record does reflect some fluctuations in Alex’s temperature, but no expert testified that those changes amounted to temperature instability. To the contrary, both Dr. Danna and Dr. Zatarain testified that the changes did not indicate temperature instability. Therefore, we find no basis in the record to support the trial court’s finding that the hospital staff breached the standard of care by not reporting temperature instability.
Third, the record contains evidence that the failure to report the increase in Alex’s respirations was also a breach of the standard of care. Although a point of disagreement among the experts, Dr. York testified that the attending nurses should have informed Dr. Waring of the increased respirations. Consequently, the record contains sufficient evidence to establish two deviations from the standard of care Inby nursing staff at Slidell Memorial Hospital, specifically, the failure to report to Dr. Waring the onset of jaundice and the increased respirations.
In addition to proving a breach of the standard of care, a plaintiff must also establish with adequate evidence a causal connection between the substandard care and the plaintiffs injuries. Pfiffner, 643 So.2d at 1230, Louisiana Revised Statute 9:2794A(3) requires the plaintiff to prove *48 that as a “proximate result” of the defendant’s failure to exercise the required degree of care, “the plaintiff suffered injuries that would not otherwise have been incurred.” Smith, 523 So.2d at 820. Normally, in cases involving patients with complicated medical histories and complex medical conditions, causation is simply beyond the province of lay persons to assess. Pfiffner, 643 So.2d at 1234.
The hospital argues that the trial court erred in finding causation because the record contains no evidence that the nursing staffs failure to report the jaundice and increased respirations to Dr. Waring caused or contributed to Alex’s death. According to the hospital, the plaintiffs failed to offer any proof that such notifications to Dr. Waring “would have changed anything in the course of the infant’s treatment.” We agree.
Dr. York offered no testimony explaining how the nursing staffs deviations from the standard of care caused or contributed to Alex’s death, and no evidence was presented that Dr. Waring would have pursued a different course of treatment if she had been immediately notified of the jaundice or respiratory rates the night before Alex’s discharge. To the contrary, Dr. Waring testified that she examined Alex from “head to toe” the next morning, October 13, 2000, noted the jaundice, and nevertheless considered him a “healthy newborn” because Alex’s vital signs were normal, including his respiratory rate, and he was eating, voiding, and active. Dr. Waring also testified that the prior respiratory rates were documented in the record and were available for her to review when she examined Alex. She 112considered his documented respiratory rates to be within the normal limits, and described the highest rate of 68 as a “one-time change” that “wouldn’t concern me too much unless I examined the baby and saw the baby was having respiratory distress,” which Alex was not experiencing. Aware of this information, Dr. Waring testified that she saw “no reason” to keep Alex in the hospital nor any need to order a bilirubin test,
Given the absence of evidence establishing a causal link between the nursing staffs deviations from the standard of care and Alex’s death, we find that the trial court erred in entering a judgment against Slidell Memorial Hospital. See Harris v. St. Tammany Parish Hosp. Serv. Dist. No. 1, 11-0941 (La.App. 1 Cir. 12/29/11), 2011 WL 6916523 (unpublished), writs denied, 12-0585 and 12-0678 (La.4/20/12), 85 So.3d 1275, 1277 (plaintiff failed to prove cause-in-fact where nurse’s failure to chart medication did not cause patient’s death). Accordingly, we reverse that portion of the judgment in favor of Washington, Ducre, and the Estate of Alex Ducre, Jr. against Slidell Memorial Hospital.[1]
Dr. Waring also assigned as error the trial court’s failure to assign any comparative fault to Washington, arguing that she should have contacted her pediatrician when Alex’s condition appeared to change. Washington testified that she noticed an increase in the yellow coloring on Monday afternoon and that Alex was sleeping more and not nursing as much. She called the nursery at Slidell Memorial Hospital and spoke to a nurse about his condition. After confirming that Alex was still eating and having urine and stool output. Washington was instructed to keep her appoint *49 ment the next morning with the lactation nurse and to call again if anything changed. Washington followed those instructions and presented Alex | lsto the lactation nurse the next day, who immediately referred them to Dr. Stevenson, who then admitted Alex into the hospital.
We find no abuse of discretion in the trial court’s allocation of no fault to Washington. The fact that she first contacted the hospital as opposed to her pediatrician does not give rise to any fault on her part. When she perceived that Alex’s condition may have changed, she promptly contacted the hospital-the last healthcare provider to treat Alex only a few days earlier. As directed, she reported for her appointment the following morning with Alex. The record establishes that Washington complied with the healthcare provider’s instructions, and acted in a reasonably prudent manner in monitoring her child’s condition and reporting that condition to the providers. This assignment of error has no merit.
B. Award to the Estate of Alex Ducre, Jr.
The trial court awarded $50,000.00 each to Washington, Alex Ducre, Sr., and the “Estate of Alex Ducre, Jr.” No party disputes that the Estate of Alex Ducre, Jr. was not a plaintiff in the proceeding and could not be a plaintiff pursuant to Louisiana Civil Code article 2315.1A(2), which vests the right to pursue a survival action exclusively in Washington and Alex Ducre, Sr.
Counsel for Washington and Ducre acknowledges that the survival action “award should have been [granted] to the parents as [Alex’s] beneficiaries,” but contends that the “award was proper” because the survival action is a separate and distinct cause of action from the wrongful death action. While that distinction is correct, it offers no support for an award to an estate which is neither a party to the proceeding nor capable of enforcing the right to pursue the claim. See La. Civ.Code art. 2315.1A; La.Code of Civ. Pro. art. 685.
To the extent Washington and Ducre suggest that the award to the estate should be re-allocated to them, we note that their answer to the defendants’ appeal was confined to a request to modify the trial court’s award of legal interest and did 1 ]4not include any reference to the trial court’s failure to allocate the estate’s award to them. Louisiana Code of Civil Procedure article 2133A provides that an appellee must state the relief demanded in the answer to the appeal. We have interpreted this article to mean that an answer to an appeal operates as an appeal only from those aspects of the judgment about which the answer complains. Samuel v. Baton Rouge General Medical Center, 98-1669 (La.App. 1 Cir. 2/18/00), 757 So.2d 43, 46, writs denied, 00-1314, 00-1329 (La.6/23/00), 765 So, 2d 1044, 1046. Given the absence in the answer of any demand for relief concerning the damage awards, the appellees’ argument that the trial court’s judgment should be modified to increase their awards is not properly before this court. See Samuel, 757 So.2d at 46.[2]
Accordingly, we vacate that portion of the judgment awarding the “Estate of Alex Ducre, Jr.” the sum of $50,000.00 plus interest.
C. Answer to Appeal (Award of Legal Interest)
In answering the appeal, Washington and Ducre assert that the trial *50 court erred in awarding legal interest from the date of judicial demand rather than the date of filing of their complaint with the Patient’s Compensation Fund Oversight Board. We agree. Louisiana Revised Statute 40:1299.47M provides that legal interest shall “accrue from the date of filing of the complaint with the board on a judgment rendered by a court in a suit for medical malpractice brought after compliance with this Part.” The filing of the complaint with the board is not considered a “judicial demand,” so the trial court’s award of interest from the date of “judicial demand” was erroneous. See La.Code of Civ. Pro. art. 421; Melancon v. Insurance Corp. of America, 633 So.2d 231, 233 (La.App. 1 Cir.1993) 11B(recognizing that a complaint filed with a medical review panel is not a “judicial demand” since it is not a “suit” filed in a court).
However, our review of the issue is not complete because we must determine which of the following constitutes the “date of filing of the complaint” under Section 1299.47M: the filing of the original complaint on October 2, 2001, or the filing of the amended complaint on May 15, 2002. The original complaint was filed against only one party, Dr. Charles Hill, but it was amended later to add claims against Dr. Waring and Slidell Memorial Hospital. The claims against Dr. Hill were voluntarily dismissed on or about August 5, 2002, prior to the convening of the first medical review panel, and neither medical review panel rendered an opinion concerning the care provided by Dr. Hill. Dr. Hill was never named as a defendant in this litigation, and no party asserted at trial that Dr. Hill was negligent in his care of Alex. The judgment rendered by the trial court did not name Dr. Hill or otherwise suggest that he was at fault for Alex’s death.
Section 1299.47M refers only to “the complaint” and does not expressly address the present situation wherein multiple complaints were filed in the same proceeding: an original complaint against a defendant who was subsequently dismissed from the medical review panel proceeding, and an amended complaint that added new defendants, one of whom has been found on appeal to be solely at fault and liable for the plaintiffs’ claims.
Our supreme court has addressed the issue in an analogous context under Louisiana Revised Statute 13:4203 for purposes of determining legal interest in a tort suit when an original petition was amended to include claims against additional defendants. In Burton v. Foret, 498 So.2d 706 (La.1986), the court considered two consolidated tort suits that arose out of automobile accidents, and both proceedings involved amendments of the original petitions to add new parties. The petition in one suit (the “Burton” claim) was amended to assert claims against |1fithe plaintiffs uninsured motorist carrier, while the petition in the other suit (the “Keith” claim) was amended to include claims against a police jury and its insurer based on allegations that the police jury was responsible for causing the accident at issue in that claim. Burton, 498 So.2d at 707-708. Both proceedings resulted in judgments against the defendants added by the amendments, and the common issue before the supreme court was when legal interest should begin to accrue on the judgments against those defendants, Burton, 498 So.2d at 710.
The court held that legal interest should accrue from the date of the filing of the original petitions in each case, but based its holding on the fact that the parties cast in judgment were solidary obligors with the parties named as defendants in the original petitions. Citing Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982), the court explained:
*51 Under Hoefly, suit against one solidary obligor interrupts prescription as to other solidary obligors. Where defendants are solidarity liable, they are jointly and severally liable for the entire debt, which would include interest from the date on which plaintiff made judicial demand on the first of those parties. Under LSA — R.S. 13:4203, legal interest runs from the date of plaintiffs first judicial claim against all parties responsible for a single tortious occurrence. LSA — C.C.P. art. 1153.
Burton, 498 So.2d at 712 (emphasis added). See also LeBouef v. Gross, 506 So.2d 879, 881 (La.App. 1 Cir.1987).
In the present case, the only party ultimately found “responsible” for causing Alex’s death is Dr. Waring. Dr. Waring was not named as a defendant in the original medical review panel complaint, and she is not a solidary obligor or joint-tortfeasor with Dr. Hill, the party named in the original complaint. Although Dr. Waring and Dr. Hill were both defendants for a period of time in the medical review panel proceeding, all claims against Dr. Hill were voluntarily dismissed, and no fault in connection with Alex’s death has since been asserted or assessed to Dr. Hill. Consequently, the complaint against Dr. Hill was not one against a responsible party and cannot serve as the start date for the accrual of legal interest |17on the judgment rendered against Dr. Waring. See Burton, 498 So.2d at 712; LeBouef v. Gross, 506 So.2d 879, 881 (La.App. 1 Cir.1987). Accordingly, we amend the trial court’s award of interest and revise the judgment to grant legal interest on the judgment against Dr. Waring from the date of the filing of the complaint against her on May 15, 2002.
CONCLUSION
For these reasons, we affirm the trial court judgment against Dr. Waring and in favor of Washington and Ducre in the amounts of $50,000.00 to each. We reverse the judgment against Slidell Memorial Hospital, and we vacate the judgment in favor of the Estate of Alex Ducre, Jr. We further amend the award of legal interest in the judgment against Dr. Waring and revise the judgment to grant legal interest from May 15, 2002. We assess one-half of the costs of this appeal to Dr. Waring and one-half to Washington and Ducre.
MOTION TO REMAND DENIED; JUDGMENT REVERSED IN PART, VACATED IN PART, AMENDED, AND AS AMENDED, AFFIRMED.
WELCH, J., concurring in part, and dissenting in part with reasons assigned.

. In light of our decision regarding the judgment against Slidell Memorial Hospital, we need not consider the assignment of error related to the trial court’s failure to allocate fault between Dr. Waring and the hospital. For this same reason, we deny the Joint Motion for Remand For the Limited Purpose of Determining Percentages of Fault filed on behalf of Dr. Waring and the hospital.

. Additionally, we note that to allow these two plaintiffs to recover the $50,000 damages awarded to the "Estate of Alex Ducre, Jr.” would appear to violate the stipulation which provides that the “cause of action for each plaintiff” does not exceed $50,000.